[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14788
Non-Argument Calendar

_____

Agency No. A209-383-402

MARIA D. AMEZCUA-PRECIADO,
GERARDO M. BUSTOS-AMEZCUA,
JESUS D. BUSTOS-AMEZCUA,

Petitioners,

versus

UNITED STATES ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(December 3, 2019)

Before BRANCH, FAY and HULL, Circuit Judges.

PER CURIAM:

Maria Amezcua-Preciado, a native and citizen of Mexico, along with her two minor children, petitions for review of the Board of Immigration Appeals' ("BIA") final order reversing the Immigration Judge's ("IJ") grant of her application for asylum and denying her withholding of removal. The BIA concluded, based on recent precedent from the Attorney General, Matter of A-B-, 27 I. & N. Dec. 316 (A.G. 2018), that Amezcua-Preciado's proposed social group of "women in Mexico who are unable to leave their domestic relationships" was not a cognizable particular social group under the Immigration and Nationality Act ("INA"). After review, we agree with the BIA that Amezcua-Preciado failed to establish membership in a particular social group. We thus deny Amezcua-Preciado's petition for review.

## I. BACKGROUND

### A.    Asylum Application

In July 2016, Amezcua-Preciado, traveling with her two minor children, arrived at the San Ysidro Port of Entry and applied for admission to the United States. The Department of Homeland Security issued notices to appear ("NTAs"), alleging that Amezcua-Preciado and her children were removable under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as immigrants not in possession of valid entry or travel documents. They admitted the allegations in the NTAs and conceded removability as charged.

2

Amezcua-Preciado applied for asylum and withholding of removal, asserting persecution on account of her membership in a particular social group. Amezcua-Preciado stated, among other things, that her husband physically and psychologically abused her and did not economically support her. Amezcua-Preciado submitted affidavits from: (1) her half-brother stating that Amezcua-Preciado's husband was an abusive drug addict who would kick her and her children out of the house; and (2) two lawyers who knew her in Mexico who stated that Amezcua-Preciado left her husband because he was physically and psychologically abusive.

Amezcua-Preciado also submitted the 2015 Human Rights Report for Mexico from the United States Department of State ("Country Report"). The Country Report indicated, in relevant part, that: (1) Mexican federal law criminalized domestic violence, including spousal rape, but state and municipal domestic violence laws "largely failed to meet the required federal standards and often were unenforced"; (2) human rights organizations reported that Mexican authorities did not take rape reports seriously, and victims were "socially stigmatized and ostracized"; (3) the Mexican federal government, and every Mexican state, criminalized femicide, and 40 federal prosecutors were assigned to cases of violence against women; (4) Mexico had established a "gender alert" system to collect gender-based violence information to support investigations, and

3

there were 72 shelters across the country; and (5) domestic violence victims in rural communities "often did not report abuses due to fear of spousal reprisal, stigma, and societal beliefs that abuse did not merit a complaint."

## B.    Asylum Hearing

At her merits hearing, Amezcua-Preciado testified about her husband's abuse, which included beatings about once a week and sometimes locking her up without food.  Because her husband provided no financial support, Amezcua-Preciado worked two jobs in order to feed herself and her children.  Approximately five times, Amezcua-Preciado went to her aunt's home to get away from the abuse, but her aunt would kick her out, stating that Amezcua-Preciado "was already married and that [she] had to be there with [her husband]."  Amezcua-Preciado tried to find another place to live, but she could not afford one.

In one incident about two years before Amezcua-Preciado left Mexico, her husband chased her from her home with a knife.  Although Amezcua-Preciado told the police about the incident, they did not pay attention to her.  Amezcua-Preciado admitted, however, that she did not file a police report of the incident.

Amezcua-Preciado testified she was afraid to return to Mexico because her husband told her if she left, he would kill her.  Although Amezcua-Preciado had never tried to relocate within Mexico, she believed she was not safe anywhere in Mexico because her husband would find her.

4

## C.    IJ's Decision Granting Asylum

The IJ granted Amezcua-Preciado's asylum application, but declined to address her claim for withholding of removal  The IJ found Amezcua-Preciado credible and determined that, while she had not shown abuse rising to the level of past persecution, she had shown a well-founded fear of future persecution based on her husband's escalating violence and threat to kill her if she left him.

The IJ determined, inter alia, that Amezcua-Preciado's proposed particular social group—women in Mexico who cannot leave domestic relationships—qualified under Matter of A-R-C-G, 26 I. & N. Dec. 388 (BIA 2014).  In A-R-C-G- the BIA concluded that "married women in Guatemala who are unable to leave their relationship" is a cognizable particular social group.  The IJ stated that Amezcua-Preciado's aunt's reactions were "indicative of societal views in Mexico of domestic violence" and that it was clear this group was viewed as a particular segment of Mexican society.

## D.    BIA's Decision Reversing IJ

The DHS appealed to the BIA.  While the appeal was pending, the Attorney General issued Matter of A-B-, 27 I. & N. Dec. 316 (A.G. 2018), which overruled A-R-C-G- as wrongly decided.  In light of A-B-, the BIA determined, in a single-member decision, that Amezcua-Preciado's particular social group was not cognizable because it was impermissibly defined by the harm directed at its

5

members.  The BIA also concluded that Amezcua-Preciado's proposed group was not cognizable because the group was defined by reference to private criminal conduct to which broad swaths of society were susceptible.  As a result, the BIA concluded that Amezcua-Preciado did not show a nexus between her persecution and a protected ground and was ineligible for both asylum and withholding of removal.

## II.  DISCUSSION

### A.    Standard of Review

Here, because the BIA issued its own decision reversing the IJ, we review only the BIA's decision.  See Perez-Zenteno v. U.S. Att'y Gen., 913 F.3d 1301, 1306 (11th Cir. 2019) (explaining that this Court reviews the BIA's decision, unless the BIA expressly adopts the IJ's opinion or agreed with the IJ's reasoning). We review de novo whether a group proffered by an asylum applicant constitutes a particular social group under the INA.  Id.  However, our de novo review is informed by Chevron deference, that is, we defer to the reasonable interpretation of the ambiguous statutory phrase "particular social group" made by three-member panel, precedential BIA decisions.  Id. at 1306, 1308; see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842-45, 104 S. Ct. 2278, 2781-83 (1984) (requiring deference to an agency's reasonable interpretation of ambiguous terms in the statute that it administers).  Likewise, the Attorney General's

6

interpretations of the INA are entitled to Chevron deference. INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25, 119 S. Ct. 1439, 1445 (1999) (explaining that the Attorney General's decision was entitled to Chevron deference because the INA provides that "[t]he Attorney General shall be charged with the administration and enforcement" of the statute and the "determination and ruling by the Attorney General with respect to all questions of law shall be controlling." (quoting INA § 103(a)(1), 8 U.S.C. § 1103(a)(1)).[1]

## B.     General Principles

An applicant for asylum must meet the INA's definition of refugee. INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). The definition of "refugee" includes any person "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of," her country of nationality "because of persecution or a well-founded fear of persecution on account of" a protected ground, including membership in a particular social group. INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The protected ground must have been, or will be, "at least one central reason for persecuting the applicant." INA § 208(b)(1)(B)(i), 8

---

[1]A single-member BIA decision resting on existing BIA or federal court precedent may also warrant Chevron deference. Quinchia v. U.S. Att'y Gen., 552 F.3d 1255, 1258 (11th Cir. 2008). However, as in Perez-Zenteno, we need not decide whether to defer to the BIA's single-member decision here because Amezcua-Preciado's petition fails both with or without Chevron deference. See Perez-Zenteno, 913 F.3d at 1308 (concluding with and without Chevron deference to the single-member decision, "the proffered group – 'Mexican citizens targeted by criminal groups because they have been in the United States and they have families in the United States' – is not legally cognizable as a particular social group").

U.S.C. § 1158(b)(1)(B)(i).  The asylum applicant bears the burden of showing "refugee" status.  Id.

Similarly, under the withholding of removal provision of the INA, the Attorney General may not remove an alien to a country if the alien's "life or freedom would be threatened" there because of a protected ground, such as membership in a particular social group.  INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A).  "The alien bears the burden of demonstrating that it is more likely than not she will be persecuted or tortured upon returning to her country." Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006) (internal quotation marks omitted).  This is a higher evidentiary standard than what is required for asylum.  Id.

Here, the sole issue raised on appeal is whether the BIA correctly concluded that Amezcua-Preciado's proposed social group does not qualify as a "particular social group" within the meaning of the INA.  The INA statute itself does not define particular social group, but we have deferred to the BIA's formulation of criteria for determining whether a particular group qualifies.  Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1196 (11th Cir. 2006) (explaining that the BIA first formulated the criteria in Matter of Acosta, 19 I. & N. Dec. 211, 233-34 (BIA 1985)); see also Perez-Zenteno, 913 F.3d at 1308-09.  Under the first of these criteria, the group's members must have a "common characteristic other than their

8

risk of being persecuted," and that characteristic must be immutable or fundamental to a member's individual conscience or identity. Castillo-Arias, 446 F.3d at 1193-94, 1196-97. However, because "'particular social group' should not be a catch-all for all persons alleging persecution who do not fit elsewhere," the "risk of persecution alone does not create a particular social group within the meaning of the INA . . . ." Id. at 1198.

Second, a group must have sufficient social distinction. Id. at 1194, 1197-98. Social distinction requires the particular social group to be perceived as a distinct group by society. Matter of W-G-R-, 26 I. & N. Dec. 208, 216 (BIA 2014). Thus, whether a group is socially distinct is determined by the perception of the society as a whole. Matter of M-E-V-G-, 26 I. & N. Dec. 227, 242 (BIA 2014). Third, a group must be "defined with particularity," meaning it must "be discrete and have definable boundaries," and not be "amorphous, overbroad, diffuse, or subjective." Gonzalez v. U.S. Att'y Gen., 820 F.3d 399, 404 (11th Cir. 2016) (quoting W-G-R-, 26 I. & N. Dec. at 214).

In the 2018 A-B- decision, the Attorney General addressed whether, and under what circumstances, victims of private criminal activity such as domestic violence constitute "a cognizable 'particular social group' for purposes of an application for asylum or withholding of removal." 27 I. & N. Dec. at 316-17. The Attorney General explained that, absent exceptional circumstances,

9

"[g]enerally, claims by aliens pertaining to domestic violence or gang violence perpetrated by non-governmental actors will not qualify for asylum." Id. at 317, 320. The Attorney General stressed—based on established binding precedent (some of which is recounted above)—that "[t]o be cognizable, a particular social group must 'exist independently' of the harm asserted in an application for asylum or statutory withholding of removal." Id. at 334-35. The group cannot be defined by the persecution of its members, but rather "the individuals in the group must share a narrowing characteristic other than their risk of being persecuted." Id. at 335 (internal alterations and quotation marks omitted).

In so holding, the Attorney General determined that, in A-R-C-G-, the BIA broke with its prior precedent applying and refining the Acosta criteria (including M-E-V-G- and W-G-R- discussed above) and wrongly decided that "married women in Guatemala who are unable to leave their relationship" was a cognizable particular social group. Id. at 331-33. The Attorney General explained that under the BIA's prior precedent, the proffered group must be independent of, and cannot be defined by, the persecution. The Attorney General also stated that in A-R-C-G-, the BIA "never considered that 'married women in Guatemala who are unable to leave their relationship' was effectively defined to consist of women in Guatemala who are victims of domestic abuse because the inability 'to leave' was created by the harm or threatened harm. Id. at 334-35.

10

In A-B-, the Attorney General further explained that groups that are "defined by their vulnerability to private criminal activity" will likely lack the required particularity because they will come from all segments of society and lack distinguishing characteristics or concrete traits. Id. at 335. Further, even if the group is defined more narrowly to avoid particularity problems, such as Guatemalan women who are unable to leave domestic relationships with children in common, the proffered group "will often lack sufficient social distinction to be cognizable as a distinct social group, rather than a description of individuals sharing certain traits or experiences," that are not "recognizable by society at large." Id. at 336.[2]

More recently, this Court, in examining the statutory phrase independently of the BIA, observed that "the phrase 'social group' implies a subset of the population bound together by some discrete and palpable characteristics." Perez-Zenteno, 913 F.3d at 1310. We noted that the modifier "particular" suggests some narrowing from the breadth otherwise found in the term "social group" and thus "denotes some characteristic setting the group off in a definite way from the vast majority of society." Id. We cautioned that a particular social group "must be

---

[2]In A-B-, the Attorney General vacated the BIA's opinion that had concluded, based on A-R-C-G-, that El Salvadoran women who are unable to leave their domestic relationships where they have children in common with their partners constituted a particular social group. A-B-, 27 I. & N. Dec. at 340. The Attorney General remanded the case to the IJ for consideration of the proposed social group using the standards articulated in the Attorney General's opinion. Id. at 340, 346.

more narrowly defined" and "should not be a 'catch all' for all persons alleging persecution who do not fit elsewhere." Id. at 1310-11 (quoting Castillo-Arias, 446 F.3d at 1198). We, "[l]ike the BIA, . . . turn[ed] to such obvious, discrete and measurable factors as immutability, identity, visibility, homogeneity, and cohesiveness in order to give meaning to the term." Perez-Zenteno, 913 F.3d at 1311.

Perhaps most importantly, this Court, like the Attorney General in A-B-, has emphasized repeatedly that "[t]he risk of persecution alone does not create a particular social group within the meaning of the INA." Castillo-Arias, 446 F.3d at 1198 (concluding noncriminal informants working against a drug cartel did not constitute a particular social group under the INA); see also Rodriguez v. U.S. Att'y Gen., 735 F.3d 1302, 1310 (11th Cir. 2013) (concluding that family members who are targeted by a drug trafficking organization in retaliation for seeking criminal justice did not constitute a particular social group, as the group was created solely from the risk of persecution).

After A-B-, at least two circuits have acknowledged in published decisions that A-B- overruled A-R-C-G-, and those circuits have concluded, based on A-B-, that similar proposed social groups of women unable to leave domestic relationships were not cognizable under the INA. See Gonzales-Veliz v. Barr, 938 F.3d 219, 231-32, 234-35 (5th Cir. 2019) (addressing proposed group of

12

"Honduran women unable to leave their relationship"); S.E.R.L. v. U.S. Att'y Gen., 894 F.3d 535, 555-57 (3d Cir. 2018) (addressing proposed group of "immediate family members of Honduran women unable to leave a domestic relationship").

## C.    Amezcua-Preciado's Proposed Particular Social Group

As an initial matter, we defer to the Attorney General's interpretation of the phrase "particular social group" in A-B- because it is reasonable and consistent with both the BIA's and this Court's prior precedent. And, in light of A-B- and this Court's particular-social-group precedent, the BIA did not err in determining that Amezcua-Preciado's proffered social group was not cognizable under the INA.

Amezcua-Preciado's proposed social group—"women in Mexico who are unable to leave their domestic relationship"—closely mirrors the proposed group in A-R-C-G- of "[m]arried women in Guatemala who are unable to leave their relationship" that the Attorney General already found not cognizable. See A-B-, 27 I. & N. Dec. at 335 (stating that if the BIA had "properly analyzed the issues [in A-R-C-G-], then it would have been clear that the particular social group was not cognizable"). Moreover, Amezcua-Preciado's proposed social group suffers from the kinds of problems the Attorney General identified in A-B- as likely to render most groups of victims of private violence not cognizable.

13

First, while the members of Amezcua-Preciado's proposed social group arguably share the immutable characteristic of being women, that characteristic alone is insufficient to make them cognizable as a particular social group under the INA. Further, nothing in the country conditions evidence indicates that Amezcua-Preciado's proposed social group is socially distinct within Mexican society. See A-B-, 27 I. & N. Dec. at 336 (stating that the "key thread running through the particular social group framework is that social groups must be classes recognizable by society at large"); Castillo-Arias, 446 F.3d at 1194, 1197-98 (explaining that the BIA's precedent requires the social group's characteristics to be "recognizable by others in the country in question" (quotation marks omitted)). The belief of Amezcua-Preciado's aunt that Amezcua-Preciado should return to her husband despite being abused is insufficient to determine that Mexican society as a whole perceives women who are unable to leave their relationships as a distinct group. See A-B-, 27 I. & N. Dec. at 336 (stating that "there is significant room for doubt that Guatemalan society views these women, as horrible as their personal circumstances may be, as members of a distinct group in society, rather than each as a victim of a particular abuser in highly individualized circumstances"); W-G-R-, 26 I. & N. Dec. at 216 (explaining that to establish social distinction, "there must be evidence showing that society in general perceives, considers, or recognizes persons sharing the particular characteristic to

14

be a group," and "it must be commonly recognized that the shared characteristic is one that defines the group").

In addition, Amezcua-Preciado's group is not defined with sufficient particularity because its boundaries are amorphous, overbroad, and subjective. See M-E-V-G-, 26 I. & N. Dec. at 214 (stating that to satisfy the particularity requirement, the group "must not be amorphous, overbroad, diffuse, or subjective); Gonzalez, 820 F.3d at 404 (noting same). As she defines it, Amezcua-Preciado's group includes all Mexican women who cannot leave any domestic relationship, whether that is a wife unable to leave her husband or a daughter unable to leave her parents. It covers women who are "unable to leave" a relationship for any reason, including for physical, legal, economic, cultural, or psychological reasons. The fact that a woman could be prevented from leaving a relationship by her psychological or economic dependence reinforces the subjective nature of this group.

Finally, to the extent Amezcua-Preciado's proposed group of Mexican women who are unable to leave their domestic relationships because they fear physical or psychological abuse by their spouse or domestic partner, this group is defined by the underlying harm asserted as persecution in Amezcua-Preciado's application for asylum and withholding of removal. The women share no "narrowing characteristic" other than their risk of being persecuted. This is the

15

kind of circular definition of a social group, created by reference to the alleged persecution, that cannot create a cognizable particular social group.  See Perez-Zenteno, 913 F.3d at 1309-10 (concluding that the BIA reasonably determined that the applicant's formulation of her proposed group of Mexican citizens targeted by criminal groups was impermissibly circular because the "defining attribute" of the social group cannot be its persecution or risk of persecution); A-B-, 27 I. & N. Dec. at 334 (stating that the proper inquiry is whether the applicant "could establish the existence of a cognizable particular social group without defining the group by the fact of persecution").

In sum, because Amezcua-Preciado's proposed group is not cognizable as a particular social group under the INA, the BIA correctly concluded that she was ineligible for either asylum or withholding of removal.[3]

**PETITION DENIED.**

---

[3]We reject Amezcua-Preciado's argument that the BIA in her case misread A-B- to create a per se rule foreclosing all particular social groups based on domestic violence.  Rather, the BIA made an individualized assessment of Amezcua-Preciado's proposed social group and concluded it was not cognizable because the group was "impermissibly defined by the harm directed at its members" and was "defined by private criminal activity where broad swaths of society may be susceptible to victimization."

16