[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10084
Non-Argument Calendar

_____

Agency No. A209-299-888

JOSUE ERNESTO MUNOZ-GARCIA,
A. C. M.,

                                                                      Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                                                      Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 25, 2020)

Before MARTIN, LUCK, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Petitioner Josue Ernesto Munoz-Garcia and his minor daughter, co-

Petitioner Angie Camila Munoz-Pineda, seek review of the Board of Immigration

Appeals' ("BIA") decision adopting and affirming the Immigration Judge's ("IJ")

denial of their applications for asylum and withholding of removal under the

Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").  On appeal, Petitioners challenge the IJ's denial of asylum and withholding of removal, arguing that the IJ erred in concluding that Petitioners' proposed group of "persons from El Salvador who refused to assist gangs, reported the gangs to the police after threats, and faced increase gang violence as a result" did not constitute a cognizable "particular social group" under the INA.  Petitioners also argue that substantial evidence did not support the IJ's denial of CAT relief.  The Government responds that we lack jurisdiction to review the petition because Petitioners failed to exhaust their administrative remedies before the BIA, and that Petitioners' arguments fail on the merits in any event.

After careful review, we conclude that we have jurisdiction to review the petition because Petitioners exhausted their challenges to the IJ's denial of asylum and withholding of removal, and exhausted a substantial-evidence challenge to the IJ's denial of CAT relief.  Our jurisdiction to review the CAT claim is limited, however.  Because Petitioners failed to argue before the BIA that the IJ clearly erred in finding that Petitioner twice safely relocated within El Salvador, we may not review Petitioners' unexhausted challenge to that factual finding.  Thus, in assessing whether substantial evidence supported the agency's denial of CAT relief, we may not revisit the IJ's "relocation" finding.

2

Although we conclude that we have jurisdiction to review the agency's denial of asylum, withholding of removal, and CAT relief, we ultimately agree with the Government on the merits of Petitioners' claims. Because substantial evidence supported the agency's denial of relief, we deny the petition.

## I.    BACKGROUND

### A.    Factual Background

Petitioners are natives and citizens of El Salvador. Thirteen years ago, in 2007, when Petitioner was residing in the city of San Salvador, police officers came to his door with their faces covered and demanded to be let in. When Petitioner refused, they forced the door open, hit Petitioner with a baton, handcuffed him, and transported him to the police station. At the police station, officers refused to explain why they had arrested Petitioner, give Petitioner their badge numbers, or allow him to speak to their commanding officer. Stating that "they were the law," the officers removed Petitioner's clothes, repeatedly beat him while handcuffed, and pepper sprayed his face.

At some point, an individual whom Petitioner could not see entered the room and told the officers to stop. The officers then transferred Petitioner to a detention center, where he was detained for several days before meeting with his lawyer. Petitioner testified that the police had unjustly arrested him without a warrant on false charges of carrying weapons. According to Petitioner, counsel advised him

that they could prove his innocence, but that the only way to avoid further detention was for him to plead guilty. To obtain his release, Petitioner decided to accept the plea deal. Petitioner's criminal records showed that, pursuant to the guilty plea, he was convicted for illegal bearing, possession, or use of a weapon of war, and for resisting arrest. He received a sentence of one year probation.

Before returning to his home in San Salvador, which is in central El Salvador, Petitioner rested for four days at his sister's house in the nearby city of Soyapango. When Petitioner finally arrived home, his neighbors informed him that the police officers who had previously mistreated him had returned. Fearing additional harm, Petitioner went to Sonsonate in western El Salvador, where he stayed with his parents for about a month. Petitioner obtained permission to transfer his sentence from the central region of El Salvador to the western region and served his probation there.

Many years later, in June 2016, Petitioners were heading into their home in San Salvador when they saw two young men running. The men, who looked like gang members, signaled for Petitioner to stop. Although Petitioner did not know what they wanted, he speculated that they might have been seeking refuge in his home. Rather than helping the men, Petitioner closed the door to keep his daughter safe.

4

Fifteen days later, the men intercepted Petitioners as they left their house and threatened to kill them if they did not leave the city. The next day, Petitioner made a formal complaint at the police station and asked the officers to keep him safe while he collected his belongings from his apartment. The police told Petitioner that they would watch the street while he moved out. When Petitioner returned to his apartment, he encountered four men, who beat Petitioner and warned that he needed to retract his police report. Although the police were parked a block away, within range to see the incident, they did not intervene to help Petitioner. Petitioner believed that the men were gang members, even though they were not dressed like gang members, and that they had a relationship with the police because only the police and his family knew when he would return to his apartment and that he had filed a police report. According to Petitioner, he suffered some internal bleeding from the beating but did not seek medical treatment.

Petitioner then stayed at his parents' house in Sonsonate without incident for 24 days. He learned from family friends, however, that the gang was asking why he had moved. Fearing that they were not safe, Petitioners left for the United States.

5

## B.    Removal Proceedings

Petitioners entered the United States without inspection in August 2016. The Department of Homeland Security served them with notices to appear, charging Petitioner with being removable as an alien present in the United States without a valid entry document, and charging co-Petitioner with being removable as an alien present in the United States without being admitted or paroled.

Although Petitioner conceded removability, he applied for asylum, withholding of removal, and CAT relief, with co-Petitioner as a derivative beneficiary.  He alleged that, if returned to El Salvador, gang members, aided by corrupt police, would kill him based on his membership in a particular social group defined as "persons from El Salvador who refused to assist gangs, reported the gangs to the police after threats, and faced increase gang violence as a result."

After a hearing, the IJ found Petitioner credible but concluded that he did not qualify for relief.  The IJ found that Petitioners did not qualify for asylum or withholding of removal because they failed to establish either a cognizable "particular social group" or a nexus between that group and any past or future harm.  The IJ explained that Petitioners' proposed group was not cognizable as a "particular social group" under the INA because it did not meet the three requirements of "immutability, particularity, and social distinction."  First, the IJ found that the proposed group did not have an "independent and immutable

6

characteristic" because it was "defined by the very persecution its members are suffering." Second, the IJ found that, rather than being particularly defined, the proposed group was overbroad, including a large portion of the Salvadoran population. Finally, given widespread resistance to the gangs in El Salvador, the IJ found that the proposed group would not be perceived as a socially distinct group. Even assuming that the proposed group was cognizable, however, the IJ found that Petitioners had not established a nexus to the group because the evidence showed that the gang was motivated to harm Petitioner in retribution for refusing to assist them and for making a police report, not because of his membership in the proposed group.

The IJ also denied relief under the CAT. The IJ found that Petitioner's mistreatment by the police in 2007 rose to the level of torture, although his mistreatment by the gang members in 2016 did not. The IJ explained, however, that "evidence of past torture is only one factor the [IJ] considers in assessing the likelihood of torture." Considering several other factors, the IJ concluded that Petitioner had not carried his burden to show that he would be tortured by the police or gang members with the consent or acquiescence of a public official if removed to El Salvador. The IJ found that the police officers had tortured Petitioner without official authorization in 2007, given that another officer had told them to stop, and that the country conditions evidence did not suggest a likelihood

7

of torture by the police.  The IJ also found that Petitioner had safely relocated within El Salvador following both his 2007 arrest and the 2016 incident.  As to the 2016 incident, the IJ found that Petitioner had not shown that the police coordinated with the gang or acquiesced in his mistreatment because the record did not establish that the police leaked the report to the gang, that the police knew about the attack in advance, or that the police did not have an operational reason for failing to intervene.  Finally, even assuming that the police had some role in the 2016 attack, the IJ found that they had acted without official authorization, based on country-conditions evidence showing that El Salvador had taken steps to discipline and remove security officials with gang ties.  "In light of the above," the IJ found that Petitioners were not entitled to relief under the CAT.

Petitioner appealed to the BIA.  In relevant part, Petitioner's brief to the BIA challenged the IJ's finding that "persons from El Salvador who refused to assist gangs, reported the gangs to the police after threats, and faced increase gang violence as a result" were not "a cognizable particular social group."  He noted the legal requirements that a particular social group must (1) share an immutable characteristic, (2) be particularly defined, and (3) have social distinction.  As to the first requirement, Petitioner argued that his proposed group shared the immutable characteristic of having "filed a police report against the gang members," which was a "shared past action, which by its very nature cannot be undone."  He argued

8

that his proposed group was particularly defined because it was "specific to only those who filed a police report." As to social distinction, he argued that his identity as an individual who had filed a police report was not confidential and that his persecutors knew who he was.

In his brief to the BIA, Petitioner also challenged the denial of CAT relief, arguing that he had suffered past harm by the police in 2007, which the IJ had found rose to the level of torture, and that the police had failed to protect him when he sought their help in 2016. Citing the country conditions evidence, Petitioner further argued that El Salvador's police force and judicial system were incapable of protecting witnesses who reported gang activity from further harm.

The BIA expressly adopted and affirmed the IJ's decision. The BIA agreed with the IJ that Petitioner's proposed group was "impermissibly circularly defined by the asserted harm." The BIA further stated that Petitioner had not explained why the IJ had erred in denying withholding of removal. Finally, the BIA affirmed the IJ's denial of CAT relief, noting that past harm was only one relevant factor, that Petitioner had not meaningfully challenged the IJ's "determination that he was able to avoid further harm from local police by moving away from his hometown in 2007," and that evidence of government efforts to address gang violence supported the IJ's finding that the government would not acquiesce in Petitioner's torture. This appeal followed.

9

## II.    DISCUSSION

### A.    Standards of Review

In immigration cases, our review is limited to "final orders of removal." *Gaksakuman v. U.S. Att'y Gen.*, 767 F.3d 1164, 1168 (11th Cir. 2014) (alteration accepted).  "We review the BIA's decision as the final judgment, unless the BIA expressly adopted the IJ's opinion" or "agree[d] with the IJ's reasoning."  *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019).  When, as here, the BIA issues its own decision and also expressly adopts the decision of the IJ, we review both decisions.  *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016).

We review our subject matter jurisdiction *de novo*.  *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015).  Once our jurisdiction is established, we review conclusions of law *de novo* and factual determinations under the highly deferential substantial-evidence test, viewing the record evidence in the light most favorable to, and drawing all reasonable inferences in favor of, the agency's decision.  *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011).  We must affirm the agency's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Indrawati*, 779 F.3d at 1297 (quotation marks omitted).  We will reverse "only when the record compels a reversal."  *Id.* (quotation marks omitted).

## B.     Jurisdiction

On appeal, Petitioners challenge the agency's denial of asylum and withholding of removal, arguing that the agency erred in concluding that their proposed "particular social group" was circularly defined and therefore not cognizable.  Petitioners also argue that substantial evidence did not support the agency's denial of CAT relief because officers tortured Petitioner in 2007, Petitioner was not able to safely relocate following that torture, officers failed to protect Petitioner when he sought their help in 2016, and country conditions evidence showed that government officials could not protect witnesses who report gang activity.

Before reaching the merits of these arguments, however, we must assess whether we have jurisdiction to do so.  *Indrawati*, 779 F.3d at 1297.  Our jurisdiction to review claims raised in a petition for review is limited by the exhaustion requirement in 8 U.S.C. § 1252(d)(1), which provides that "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right."  INA § 242(d)(1), 8 U.S.C. § 1252(d)(1); *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) ("We lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted his administrative remedies with respect thereto.").  "A petitioner fails to exhaust [his] administrative remedies with respect

to a particular claim when [he] does not raise that claim before the BIA." *Indrawati*, 779 F.3d at 1297. Thus, "when a petitioner has neglected to assert an error before the BIA that he later attempts to raise before us," we lack jurisdiction to consider the claim of error, *Jeune*, 810 F.3d at 800, "even if the BIA addressed the underlying issue *sua sponte*," *Amaya-Artunduaga*, 463 F.3d at 1251.

Exhaustion "is not a stringent requirement." *Indrawati*, 779 F.3d at 1297. A petitioner is not required "to use precise legal terminology or provide well-developed arguments to support his claim." *Jeune*, 810 F.3d at 800 (quotation marks omitted). Instead, a petitioner need only "raise[] the core issue before the BIA" and "set out any discrete arguments he relies on in support of that claim," such that the BIA has sufficient information "to review and correct any errors below." *Id.* (quotation marks omitted). These requirements serve the core functions of exhaustion, namely, "avoiding premature interference with the administrative process and ensuring that the agency has had a full opportunity to consider a petitioner's claims." *Indrawati*, 779 F.3d at 1298 (quotation marks omitted).

On appeal, the Government argues that we lack jurisdiction to consider the petition for review because, when Petitioners appealed to the BIA, they failed to challenge two dispositive rulings in the IJ's decision. First, the Government contends that we cannot review the agency's denial of asylums and withholding of

12

removal because Petitioners did not argue before the BIA that the IJ erred in finding that the proposed "particular social group" was circularly defined and therefore not cognizable. Second, the Government argues that we cannot review the agency's denial of CAT relief because Petitioners did not challenge the IJ's "dispositive" finding that they could avoid future harm from the local police and gang members by relocating within El Salvador.

After careful review, we reject the former argument and agree in part with the latter argument. In short, we conclude that we have jurisdiction to review the agency's finding that Petitioners' proposed "particular social group" was not cognizable because Petitioners exhausted their challenge to the IJ's "circularity" finding. As to the CAT claim, we conclude that we lack jurisdiction to review the IJ's finding that Petitioners had twice safely relocated within El Salvador because they did not raise that issue before the BIA. Nevertheless, because the IJ denied CAT relief based on the totality of the evidence without ruling that Petitioner's ability to relocate alone precluded relief, we conclude that we retain jurisdiction to review whether substantial evidence supported the agency's denial of Petitioners' CAT claim.

First, contrary to the Government's argument, we have jurisdiction to review the agency's denial of asylum and withholding of removal on the ground that Petitioners' proposed "particular social group" was not cognizable. To obtain

13

asylum or withholding of removal under the INA, an applicant must prove that, if returned to his home country, he will be persecuted on account of "race, religion, nationality, membership in a particular social group, or political opinion."  INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A) (asylum); INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A) (withholding of removal).  Under the INA, a group is cognizable as a "particular social group" only if it satisfies three requirements. *Amezcua-Preciado v. U.S. Att'y Gen.*, 943 F.3d 1337, 1342–43 (11th Cir. 2019). First, "the group's members must have a common characteristic other than their risk of being persecuted" that is "immutable or fundamental to a member's individual conscience or identity."  *Id.* at 1342 (quotation marks omitted).  In other words, the group cannot be circularly defined by the fact that members have been persecuted or are at risk of persecution; instead, group members must share an immutable characteristic that is independent of the harm members have or will suffer.  Second, the group "must have sufficient social distinction," such that it would "be perceived as a distinct group by society."  *Id.*  Finally, the group "must be defined with particularity, meaning it must be discrete and have definable boundaries, and not be amorphous, overbroad, diffuse, or subjective."  *Id.* at 1343 (quotation marks omitted).

Here, we disagree with the Government's contention that Petitioners did not exhaust a challenge to the IJ's dispositive finding that their proposed particular

14

social group—"persons from El Salvador who refused to assist gangs, reported the gangs to the police after threats, and faced increase gang violence as a result"— was circularly defined by group members' persecution and therefore not cognizable.  The IJ's finding that the proposed group was "defined by the very persecution its members are suffering" was part and parcel of its finding that Petitioners had not met the first "particular social group" requirement—that the group's members share an immutable characteristic that is independent of the risk of persecution.  *See id.* at 1342.  In their BIA brief, Petitioners identified the three "particular social group" requirements and argued that their proposed group met the first requirement because members shared the immutable characteristic of having "filed a police report against the gang members."

While the Government correctly notes that Petitioners referred to "immutability" rather than "circularity" in their brief to the BIA, that fact is unsurprising because the IJ herself never used the term "circularity."  Instead, the IJ—like Petitioners in their brief to the BIA—referred to "immutability" as a catch-all term for the requirement that a group's members must have a shared characteristic that is "independent and immutable."[1]  Moreover, Petitioners' failure to refer to "circularity" in their BIA brief is irrelevant because "precise legal terminology" is not required to exhaust a claim.  *Jeune*, 810 F.3d at 800 (quotation

---

[1] Only the BIA expressly described the group as "impermissibly circularly defined."

15

marks omitted).  By expressly challenging the IJ's finding on a discrete legal issue—whether the proposed group's members had a legally cognizable shared characteristic—and presenting an argument that, if accepted, would result in a reversal of the IJ's circularity finding, Petitioners exhausted their claim of error.[2]  Accordingly, we have jurisdiction to review the agency's ruling that the proposed "particular social group" was not cognizable.  *See Amaya-Artunduaga*, 463 F.3d at 1250.

The Government also argues that we lack jurisdiction to review the denial of CAT relief because, in their brief to the BIA, Petitioners failed to challenge the IJ's "dispositive" finding that they could safely relocate within El Salvador.  This argument, however, misinterprets the nature of the IJ's "relocation" finding.

To qualify for CAT relief, an applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal," 8 C.F.R. § 208.16(c)(2), and that the torture would be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," 8 C.F.R. § 1208.18(a)(1).  In assessing a CAT claim, the agency must consider "all evidence relevant to the possibility of

---

[2]  The IJ also found that the proposed group was not cognizable because it was not particularly defined or socially distinct.  Petitioners articulated challenges to those findings in their BIA brief, and the Government does not contend that Petitioners failed to exhaust their asylum and withholding-of-removal claims on those grounds.

16

future torture." 8 C.F.R. § 1208.16(c)(3). Relevant evidence includes, among other things, (1) "[e]vidence of past torture inflicted upon the applicant," (2) "[e]vidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured," (3) "[e]vidence of gross, flagrant or mass violations of human rights within the country of removal," and (4) "[o]ther relevant information regarding conditions in the country of removal." *Id.* § 1208.16(c)(3)(i)–(iv).

In denying Petitioners' CAT claim, the IJ found that Petitioner had safely relocated twice, after both his 2007 arrest and the 2016 gang incident. Insofar as the Government argues that Petitioners failed to exhaust a challenge to this finding, we agree. Petitioners made no reference to the IJ's "relocation" finding in either their notice of appeal to the BIA or their BIA brief. We therefore lack jurisdiction to review that finding.

But our inability to review the IJ's "relocation" finding does not deprive us of jurisdiction to review whether substantial evidence supported the agency's denial of Petitioners' CAT claim. This is so because, contrary to the Government's argument, the IJ did not rule as a dispositive matter that Petitioners' ability to safely relocate precluded CAT relief. Instead, following the CAT regulations, the IJ and BIA considered the fact that Petitioner had safely relocated as one of "many

17

factors" relevant to Petitioners' CAT claim.[3]  In other words, the agency made an "all things considered" judgment that Petitioners were not likely to be tortured with the consent or acquiescence of a government official based on all of the record evidence.  This evidence included not only the fact that Petitioner had avoided further injury by relocating within El Salvador, but also evidence indicating that the government would not consent to or acquiesce in Petitioners' torture.

With the exception of Petitioners' "relocation" arguments, which they raise for the first time here, their BIA brief identified each argument that they now rely on in arguing that substantial evidence did not support the IJ's finding that they would not be tortured if removed to El Salvador.[4]  Thus, we have jurisdiction to

---

[3]  The Government's argument appears to confuse the regulations governing withholding-of-removal claims under the INA with those governing CAT claims.  When assessing a withholding-of-removal claim under the INA, a finding that the applicant could safely relocate within the country is legally dispositive.  8 C.F.R. § 1208.16(b)(1)(B), (b)(2) (stating that an applicant for withholding of removal under the INA cannot demonstrate a well-founded fear of future persecution if "the applicant could avoid a future threat to his or her life or freedom by relocating to another part of the proposed country of removal and, under all the circumstances, it would be reasonable to expect the applicant to do so").  By contrast, the regulations governing CAT claims merely state that "[e]vidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured" is "evidence relevant to the possibility of future torture," which must be considered along with other evidence.  8 C.F.R. § 1208.16(c)(3).  The Government has not cited any authority indicating that an applicant's ability to relocate is legally dispositive for a CAT claim.  In any event, the Government misreads the IJ's decision in suggesting that her "relocation" finding was dispositive, since the IJ merely considered Petitioners' ability to relocate as further evidence that they would not likely be tortured if removed.  *Cf. Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1292 & n.4 (11th Cir. 2006) (concluding that the petitioner had not shown a reasonable probability of future persecution in part because he had safely relocated in the past, and finding no occasion to further consider whether his ability to relocate in the future was legally dispositive).

[4]  Notably, the Government's exhaustion argument focuses exclusively on the IJ's "relocation" finding.  The Government does not contend that Petitioners failed to exhaust challenges to the

18

review whether substantial evidence supported the agency's denial of CAT relief, even though we may not revisit the IJ's finding that Petitioner had safely relocated within El Salvador. *Cf. Shkambi v. U.S. Att'y Gen.*, 584 F.3d 1041, 1048–49 & n.4 (11th Cir. 2009) (declining to address an unexhausted argument that the IJ engaged in speculation in discrediting the petitioner, but nevertheless reviewing the agency's negative credibility finding to the extent that the petitioner had raised other challenges to that finding in his appeal to the BIA).

Having concluded that we retain jurisdiction to review the petition for review, with the exception of the IJ's finding that Petitioner had twice safely relocated, we proceed to the merits of Petitioners' appeal.

## C.    Asylum and Withholding of Removal

Petitioner sought asylum and withholding of removal under the INA on the ground that he would be persecuted based on his membership in a "particular social group" defined as "persons from El Salvador who refused to assist gangs, reported the gangs to the police after threats, and faced increase gang violence as a result." The IJ found that the proposed group was not legally cognizable because, among other things, it was circularly "defined by the very persecution its members are suffering" and therefore members did not have an "independent and

---

other findings underlying the IJ's denial of CAT relief. After reviewing Petitioners' BIA brief, we conclude that they exhausted an argument that substantial evidence did not support the agency's denial of CAT relief.

immutable" shared characteristic. The BIA agreed with the IJ, concluding that the proposed group was "impermissibly circularly defined by the asserted harm." Although Petitioner challenges these findings on appeal, we agree with the agency that the proposed "particular social group" is not cognizable.

As noted above, to be cognizable as a "particular social group" under the INA, a proposed group must satisfy three requirements: (1) the group's members must be united by "a common, immutable characteristic"; (2) the group "must be defined with particularity"; and (3) the group must "be socially distinct within the society in question." *Perez-Zenteno*, 913 F.3d at 1308–09 (quotation marks omitted). As relevant here, the group members' common, immutable characteristic must be independent of the persecution or risk of persecution alleged. *Id.* at 1309–10. In other words, "[t]he group cannot be [circularly] defined by the persecution of its members, but rather the individuals in the group must share a narrowing characteristic other than their risk of being persecuted." *Amezcua-Preciado*, 943 F.3d at 1343 (quotation marks omitted). This is so because the term "particular social group" in the INA "should not be a 'catch all' for all persons alleging persecution who do not fit" within the other categories of persons protected under the statute. *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1198 (11th Cir. 2006).

20

Here, the agency did not err in concluding that Petitioner's proposed "particular social group" failed to identify a common characteristic independent of members' persecution or risk of persecution. Indeed, Petitioner's definition of the group as "persons from El Salvador who refused to assist gangs, reported the gangs to the police after threats, and faced increase gang violence as a result" evokes the alleged underlying persecution or risk of persecution three times. First, individuals "who refused to assist gangs" have necessarily been *targeted* for assistance. Second, individuals who "reported the gangs to the police after threats" have necessarily been *threatened*. And third, individuals who "faced increase gang violence as a result [of reporting gang threats]" are necessarily *at risk of future violence*. Although Petitioner seeks to focus our attention on the shared historical attribute of having "filed a police report against the gang members," even he cannot maintain that narrow construction of his proposed group for long. Within the same paragraph he allows the alleged underlying persecution to slip back into his definition of the group, stating that members have reported the gangs to the police "after threats."

Petitioners proposed "particular social group" is not meaningfully different from the many proposed groups that we have held are circularly defined by group members' persecution or risk of persecution. *Perez-Zenteno*, 913 F.3d at 1309–10 (proposed group of "Mexican citizens targeted by criminal groups because they

21

have been in the United States and have families in the United States" was "impermissibly circular" because "its defining attribute is the risk of persecution stemming from being targeted by criminal groups" (emphasis omitted)); *Amezcua-Preciado*, 943 F.3d at 1345 (proposed group of "Mexican women who are unable to leave their domestic relationships because they fear physical or psychological abuse by their spouse or domestic partner" was not cognizable because it was circularly "defined by the underlying harm asserted as persecution"); *Castillo-Arias*, 446 F.3d at 1196, 1198 (proposed group of "noncriminal informants working against the Cali cartel" was not cognizable because "their defining attribute is their persecution by the cartel"); *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1310 (11th Cir. 2013) (proposed group of "members of a family targeted by a drug-trafficking organization because a family member sought criminal justice against a member of the drug-trafficking organization" was not cognizable because the group's "defining attribute" was "its persecution by the drug-trafficking organization"). Accordingly, Petitioners failed to identify a cognizable "particular social group" and were ineligible for asylum. *See* INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A) (providing that asylum requires a showing of persecution "on account of" a protected category such as "membership in a particular social group"). Because Petitioners did not qualify for asylum, the

22

agency correctly denied their withholding-of-removal claim as well.[5]  *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 819 (11th Cir. 2004) (noting that an applicant who cannot establish that he qualifies for asylum cannot meet the "more stringent" standard for withholding of removal).

### D.    Convention Against Torture

To qualify for relief under the CAT, an applicant must establish that he would more likely than not be tortured with the consent or acquiescence of a public official if removed to his proposed country of removal.  8 C.F.R. §§ 208.16(c)(2), 1208.18(a)(1).  In assessing a CAT claim, the agency must consider "all evidence relevant to the possibility of future torture," including evidence that the applicant could safely relocate within the country and other evidence regarding country conditions.  8 C.F.R. § 1208.16(c)(3).

Here, substantial evidence supported the agency's finding that Petitioners had not shown a likelihood of future torture with the Salvadoran government's consent or acquiescence.  First, as discussed above, we lack jurisdiction to review the agency's finding that Petitioner had twice safely relocated within El Salvador—after police officers tortured him in 2007, and after gang members attacked him in 2016.  We therefore treat that finding as established.

---

[5]  Because Petitioner's failure to identify a cognizable "particular social group" was dispositive as to his claims for asylum and withholding of removal, we need not address the parties' other arguments regarding those claims.

Second, the State Department's country reports on El Salvador provided substantial evidence for the agency's finding that the Salvadoran government would not consent to or acquiesce in future torture by the police or the gangs. "Acquiescence requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004) (quotation marks omitted). Here, the country reports noted that, in response to complaints about police misconduct, the Salvadoran government had launched a new internal investigative office, which had disciplined and removed hundreds of police officers for engaging in criminal conduct or having gang ties. The State Department further reported that, although gang violence remained a problem, the Salvadoran government had made efforts to address criminal gang activity. Given this evidence, the record does not compel a finding that the Salvadoran government would consent to or acquiesce in Petitioners' torture. *Id.* at 1243 (affirming the BIA's finding that the Peruvian government would not acquiesce in the petitioner's torture by a terrorist group because the State Department reports indicated that the government was attempting to combat the terrorist group, "albeit not entirely successfully" (quotation marks omitted)). This is so even if Petitioners are correct that the record evidence might have supported a different finding. *See Seck*, 663 F.3d at 1364 ("[T]he mere fact

24

that the record may support a contrary conclusion is not enough" to show that the record compels reversal. (quotation marks omitted)).

Because Petitioner was able to safely relocate within El Salvador and failed to show that the Salvadoran government would consent to or acquiesce in his torture, substantial evidence supported the agency's finding that Petitioners did not qualify for relief under the CAT.[6]  Accordingly, we affirm the agency's denial of Petitioners' CAT claim.

## III.    CONCLUSION

Although we reject the Government's argument that we lack jurisdiction to review the petition, we agree with the Government that substantial evidence

---

[6] Petitioners also argue that the agency did not give reasoned consideration to their CAT claim because the agency failed to evaluate Petitioner's testimony regarding the 2016 gang attack. Specifically, Petitioners argue that the agency should have found that, in 2016, the police consented to or acquiesced in Petitioner's mistreatment by the gang because Petitioner testified that the police were close enough to see the attack but failed to intervene, that only the police knew about his police report, and that only the police and his family knew when he would return to his apartment.  We have jurisdiction to review this argument. *See Indrawati*, 779 F.3d at 1299 (concluding that a petitioner need not exhaust an argument that the BIA's decision lacked reasoned consideration because, when appealing to the BIA, a petitioner cannot "rais[e] an argument about the lack of reasoned consideration displayed by a [BIA] decision not yet in existence").  Nevertheless, the record belies Petitioners' contention.  The IJ expressly considered Petitioner's testimony on these points and explained why that testimony did not compel an inference that the police had cooperated with the gang. *See Min Yong Huang v. Holder*, 774 F.3d 1342, 1349 (11th Cir. 2014) (noting that the agency gives reasoned consideration to an application if it "consider[s] the issues raised by the applicant and announce[s] its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted" (alteration accepted) (quotation marks omitted)).  In any event, given the country-conditions evidence and Petitioner's history of safely relocating, the record would not compel reversal even if the record did not support the agency's findings regarding past mistreatment or torture.

25

supported the agency's denial of asylum, withholding of removal, and CAT relief.

Accordingly, we deny the petition.

**PETITION DENIED.**