[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 20-13177
Non-Argument Calendar

————————————————

Agency No. A206-775-482

NELSON RONEY FUNEZ-TURCIOS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals

————————————————

(April 20, 2021)

Before WILSON, ROSENBAUM, and BRANCH, Circuit Judges.

PER CURIAM:

Nelson Roney Funez-Turcios petitions for review of a decision of the Board of Immigration Appeals (BIA), affirming the denial of his application for asylum and withholding of removal under the Immigration and Nationality Act (INA), and relief under the Convention Against Torture (CAT). He argues that the BIA erred in concluding that the group of "former public-school student[s] who refused gang recruitment and return[] to Honduras as a member of an American family, spouse to a U.S. Citizen and stepfather to three U.S. Citizen children" does not qualify as a "particular social group" under the INA, and that the record compels a finding that he would be tortured by or with the acquiescence of the Honduran government if he were returned to Honduras. Because the BIA properly found that Funez-Turcios's proposed group did not qualify as a "particular social group" and substantial evidence supports the BIA's CAT determination, we deny the petition.

## I.    Background

Funez-Turcios, a native and citizen of Honduras, entered the United States without authorization in 2014. In January 2015, he filed an application for asylum, withholding of removal, and CAT relief, followed by an amended application in 2018. He claimed that he suffered and feared persecution on account of his membership in a particular social group, and that he feared that he would be tortured if he returned to Honduras.

2

In his application, Funez-Turcios stated that the neighborhood where he lived in Honduras was controlled by criminal gangs known as the Maras, and that the Maras forced young men like him to join them, sell drugs, and "do other illegal things." He stated that while he was in school in Honduras in 2013, a group of Maras would wait around the school looking for recruits, and that one day, they threatened him. Specifically, while he was attending a school event at a local park, the group caught him and told him he "had to join them sooner or later." After he refused, the group beat him and told him that he had to join the gang and that they knew where he lived and who his family was. The next day, his parents spoke to his school's principal about the incident. Funez-Turcios stated that the principal told his parents that he would call the police and get security for the school, but that it never happened.

After the group of Maras pursued him a second time as he was leaving school, Funez-Turcios decided to quit school and stay at home. On two occasions thereafter, he saw members from the group riding up and down his street on motorbikes. As a result, he decided to leave Honduras. In his application for asylum, he stated that the Maras controlled the entire country and would find him wherever he moved in Honduras. He wrote that he feared that if he returned to Honduras, the Maras would beat, torture, or kill him because he decided to flee to the United States instead of joining them. He asserted that the government could

3

not protect him because the Maras controlled the neighborhoods and were stronger than the police, and also that the police were "corrupt and sometimes protect[ed] the Maras."

In support of his application, Funez-Turcios submitted several country conditions reports. The reports noted that the military had taken charge of most aspects of public security in Honduras and had instituted a children's training program in an attempt to keep young people "from joining the ranks of warring street gangs that control[led] entire sections of the country's most violent cities," but that there had been cases of military police engaging in murder, torture, and extortion. The reports also noted that national police had captured high-profile gang members and drug traffickers, that the government had transferred high-security detainees, including gang members, to two newer maximum-security facilities, and that the Honduran government had dismissed more than 1,000 police officers suspected of corruption or human rights violations—but also that the mass firings led to the gangs hiring many of the former officers as security or trainers.

After a hearing on Funez-Turcios's claims, an immigration judge (IJ) issued an oral decision denying Funez-Turcios's claims. The IJ found that Funez-Turcios's proposed social group of "former public school student[s] who refused gang recruitment and return[] to Honduras as a member of an American family, spouse to a U.S. citizen and stepfather to three U.S. citizen children" was

4

not a particular social group under the INA because there was no evidence that the group was socially distinct in Honduran society, and it was not defined with particularity. The IJ also found that Funez-Turcios's proposed social group was circularly defined because it was defined in part by the risk of persecution. Therefore, the IJ denied Funez-Turcios's asylum and withholding of removal claims for failure to establish a particular social group.

As to Funez-Turcios's CAT claim, the IJ found that Funez-Turcios did not establish that the government "would torture him or acquiesce and turn a blind eye to his torture," noting that evidence that the police were aware of a particular crime but failed to apprehend the criminals was insufficient to show government acquiescence to the criminals' behavior.

Funez-Turcios appealed the IJ's decision to the BIA, and the BIA ultimately dismissed his appeal. The BIA agreed with the IJ that Funez-Turcios's proposed social group was not cognizable, "which [was] dispositive of his asylum application" and his request for withholding of removal. Regarding Funez-Turcios's CAT claim, the BIA agreed with the IJ that Funez-Turcios failed to show that it was more likely than not that he would be tortured by or with the consent or acquiescence of the Honduran government upon his return to Honduras. The BIA noted that Funez-Turcios's generalized statements about the Honduran government's corruption and inability to control gang violence did not prove error

5

in the IJ's denial of his CAT claim.  Funez-Turcios then petitioned for review of the BIA's decision.

## II.     Asylum & Withholding of Removal

Funez-Turcios argues that the BIA erroneously denied his application for asylum and withholding of removal.  He maintains that he established past persecution or a well-founded fear of future persecution on account of his membership in a particular social group.

"We review the decision of the [BIA] and the decision of the [IJ] to the extent that the [BIA] expressly adopted the opinion of the [IJ]." *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947–48 (11th Cir. 2010) (quoting *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009)).  "[W]e review conclusions of law de novo." *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).

To qualify for asylum, Funez-Turcios had the burden to prove that he is a refugee—that he is a person who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A), 1158(b)(1)(B)(i).  Similarly, to qualify for withholding of removal, Funez-Turcios had the burden to show that, if returned to Honduras, his "life or freedom would be threatened in that country

because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3).

Funez-Turcios based his claims for asylum and withholding of removal on his membership in the social group of "[f]ormer public-school student[s] who refused gang recruitment and return[] to Honduras as a member of an American family, spouse to a U.S. Citizen and stepfather to three U.S. Citizen children." The BIA affirmed the IJ's conclusion that "this group fails the particular social group and the particularity requirements." Funez-Turcios argues that the BIA erred in doing so. Whether the proposed group qualifies as a "particular social group" under the INA is a question of law reviewed de novo. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).

For a group to qualify as a "particular social group" under the INA: (1) "the group's members must have a common characteristic other than their risk of being persecuted, and that characteristic must be immutable or fundamental to a member's individual conscience or identity"; (2) the group must have "sufficient social distinction," meaning it must "be perceived as a distinct group by society . . . as a whole"; and (3) the "group must be defined with particularity, meaning it must be discrete and have definable boundaries, and not be amorphous, overbroad, diffuse, or subjective." *Amezcua-Preciado v. U.S. Att'y Gen.*, 943 F.3d 1337, 1342–43 (11th Cir. 2019). A "particular social group" cannot be defined by a risk

7

of persecution because such a definition would be "impermissibly circular." *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1309–10 (11th Cir. 2019).

The BIA did not err in concluding that Funez-Turcios's proposed group does not qualify as a "particular social group." *See Amezcua-Preciado*, 943 F.3d at 1342–43. First, the group is impermissibly circular because it is defined in part by its risk of persecution. *See Perez-Zenteno*, 913 F.3d at 1310. Part of the group's definition is those who "refused gang recruitment," and Funez-Turcios's feared persecution is from gang members. *See id.* Second, the proposed group is not socially distinct because Funez-Turcios provided no evidence that "former public school student[s] who refused gang recruitment and return[] to Honduras as a member of an American family, spouse to a United States citizen and step-father to three United States citizen children" are perceived, considered, or recognized as a distinct group by Honduran society as a whole. *See id.*; *Amezcua-Preciado*, 943 F.3d at 1342–43. Thus, Funez-Turcios's proposed group is not cognizable, and the BIA properly denied his claims for asylum and withholding of removal.

III.    Convention Against Torture Relief

Funez-Turcios next argues that the BIA erred in denying his claim for CAT relief. To be eligible for CAT relief, Funez-Turcios had the burden to prove that he more likely than not would be tortured "at the instigation or with the consent or acquiescence of a public official or other person acting in an official capacity," if

8

USCA11 Case: 20-13177     Date Filed: 04/20/2021     Page: 9 of 10

removed to Honduras.[1]  8 C.F.R. §§ 208.16(c)(2), 208.18(a)(1); *see Jean-Pierre v. U.S. Att'y Gen.*, 500 F.3d 1325, 1322–23 (11th Cir. 2007).  The BIA found that Funez-Turcios failed to prove that he would be tortured "by or with the acquiescence . . . of a public official or other person acting in an official capacity." We review this finding for substantial evidence.  *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006).

A review of the record confirms that Funez-Turcios did not present any evidence of conduct remotely resembling torture in the immigration proceedings. Nevertheless, he argues that, if removed to Honduras, he would be tortured "by or with the acquiescence" of the Honduran government because "the Honduran government, despite its general efforts, is ultimately powerless to contain the violence caused by the Maras and widespread corruption of law enforcement officials, including in the judiciary."  But a government does not acquiesce in torture if it actively, albeit unsuccessfully, tries to combat crime.  *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1243 (11th Cir. 2004).  Here, although some record evidence supports the rampant gang violence and corruption of police, the record does not compel us to find that Funez-Turcios would more likely than not suffer torture by the Honduran government or with its acquiescence.  Honduras

---

[1]  To constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering.   8 C.F.R. § 208.18(a)(5).

9

prohibits government torture, and the record shows that the Honduran government is actively attempting to combat gang violence. For example, the government instituted a program designed to keep young people from joining gangs, captured high-profile gang members and drug traffickers, moved high-security inmates to new maximum-security facilities, and dismissed over 1,000 police officers suspected of corruption or human rights violations. Thus, substantial evidence supports the BIA's denial of Funez-Turcios's claim for CAT relief. *See Jean-Pierre*, 500 F.3d at 1324.

## IV.    Conclusion

For these reasons, we deny Funez-Turcios's petition for review.

**PETITION DENIED.**