[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11749
Non-Argument Calendar

_____

Agency No. A209-890-801

CIBA NOHELY DOMINGUEZ-SALMERSON,
DIEGO IVAN MORALES-DOMINGUEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 3, 2021)

Before WILSON, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

Cibia Dominguez-Salmerson seeks review of the Board of Immigration Appeals' (BIA) final order affirming the immigration judge's (IJ) denial of her application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT).[1]

Because we write for the parties, we assume familiarity of the facts and set out only those necessary for the resolution of this appeal.  Dominguez-Salmerson and her son are natives and citizens of Honduras.  In Honduras, Dominguez-Salmerson lived with her domestic partner Marvin, Marvin's aunt Ida, and Ida's partner Ephraim Hernandez-Morales.  Dominguez-Salmerson claims that she was sexually harassed, threatened, and stalked by Hernandez-Morales and that Hernandez-Morales's family members, who were in a gang, threatened her.  She says that she left Honduras to flee from Hernandez-Morales.

Dominguez-Salmerson and her son entered the United States at or near Hidalgo, Texas in November 2016.  In December 2016, the Department of Homeland Security served them with a notice to appear, charging them with being removable under the Immigration and Nationality Act (INA) § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as being persons not in possession of valid entry

---

[1] Dominguez-Salmerson's petition for review is filed on behalf of herself and Diego Morales-Dominguez, her minor child and derivate asylum applicant.

documents at the time of admission.  Dominguez-Salmerson applied for asylum and withholding of removal under the INA and CAT.  She contended that she qualified as a refugee under the INA because she belonged to a particular social group.  She described the social group as "a family relative of those sexually molested by gangs or gang members family, who resist sexual assault by the same gang."

The IJ found that Dominguez-Salmerson did not satisfy her burden of proof for asylum or withholding removal, and that her CAT claim also failed.  She appealed to the BIA, arguing that she was eligible for asylum or withholding.  The BIA dismissed Dominguez-Salmerson's appeal, relying on *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018), to conclude that she failed to establish membership in a cognizable particular social group because her proposed social group was circularly defined, and was not distinct or particular.[2]  It also found that she had not established that a central reason Hernandez-Morales had the inclination to harm her was on account of her membership in the putative social group, as is required by law.  This appeal followed.

First, Dominguez-Salmerson argues that *Matter of A-B-* was erroneously decided because past harm may be used for a future fear claim.  She also says that

---

[2] Dominguez-Salmerson does not present an argument challenging the denial of her CAT claim. Therefore, she has abandoned that issue. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam).

her particular social group was not circularly defined because she was targeted by gangs for resisting sexual assault by a gang member's relative and, thus, was defined by her irretrievable resistance to repeated harm.  Second, Dominguez-Salmerson argues that the BIA's rationale for dismissing her application for asylum was contrary to the well-established principle that many bona fide refugees flee or fear harm by non-state actors and cannot avail themselves of government protection, and that the BIA did not make an individualized analysis of whether the Honduran government was unable or unwilling to control her non-state persecutor.

I.

We review only the decision of the BIA, except to the extent that the BIA expressly adopts or explicitly agrees with the IJ's opinion.  *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947–48 (11th Cir. 2010).  We do not consider issues that were not reached by the BIA.  *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016) (per curiam).

"In a petition for review of a BIA decision, we review conclusions of law de novo."  *Id.*  And whether an asserted group qualifies as a "particular social group" under the INA is a question of law.  *Id.*  Our review is informed by the principles of *Chevron* deference.  *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842–44 (1984); *see also Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1195–96 (11th Cir. 2006) (applying *Chevron* deference to the BIA's interpretation

of what constitutes a particular social group within the meaning of the INA).

However, a single-member, non-precedential BIA decision may not be entitled to

*Chevron* deference unless it is deemed to have relied on existing precedent such

that the single-member BIA decision is actually dictated or compelled by an earlier

decision. *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1308 (11th Cir. 2019).

We review the BIA's factual determinations under the substantial evidence

test. *Gonzalez*, 820 F.3d at 403. Under this "highly deferential" test, we must

affirm the BIA's decision if it is "supported by reasonable, substantial, and

probative evidence on the record considered as a whole." *Adefemi v. Ashcroft*, 386

F.3d 1022, 1026–27 (11th Cir. 2004) (en banc).

## II.

The Attorney General may grant asylum to an applicant who meets the

INA's definition of a "refugee." INA § 208(b)(1)(A), 8 U.S.C. § 1158(b)(1)(A).

A refugee is defined as:

> any person who is outside any country of such person's nationality . . .
> and who is unable or unwilling to return to, and is unable or unwilling
> to avail himself or herself of the protection of that country because of
> persecution or a well-founded fear of persecution on account of race,
> religion, nationality, membership in a particular social group, or
> political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The applicant bears the burden

of proving that she is a refugee. INA § 208(b)(1)(B)(i), 8 U.S.C.

§ 1158(b)(1)(B)(i).

5

An applicant can satisfy the burden of proving refugee status by showing membership in a "particular social group" entitled to protection. We have stated that the criteria for establishing a particular social group, as interpreted by the BIA, are (1) "the group's members must have a common characteristic, other than their risk of being persecuted, that characteristic must be immutable or fundamental to a member's individual conscience or identity"; (2) "a group must have sufficient social distinction" so as to be perceived as a distinct group by society as a whole; and (3) "a group must be defined with particularity, meaning it must "be discrete and have definable boundaries, and not be amorphous, overbroad, diffuse, or subjective." *Amezcua-Preciado v. U.S. Att'y Gen.*, 943 F.3d 1337, 1342–43 (11th Cir. 2019) (per curiam) (quotation marks omitted). Additionally, the group cannot be defined by its persecution or risk of persecution. *Castillo-Arias*, 446 F.3d at 1198. We have cautioned that a particular social group should not be a "catch all" for all persons alleging persecution who do not fit elsewhere within the protected grounds, as that would "render the other four categories meaningless." *Id.* at 1197–98.

In *Amezcua-Preciado*, we deferred to the Attorney General's interpretation of the phrase "particular social group" in *Matter of A-B-*. We held that the applicant's proposed particular social group, "women in Mexico who are unable to leave their domestic relationship," was not legally cognizable because the applicant

6

did not provide sufficient evidence that the group was socially distinct, failed to define the group with particularity, and defined the group by the underlying alleged persecution. *Amezcua-Preciado*, 943 F.3d at 1344–45.[3]  Similarly, we afforded *Chevron* deference to the BIA in *Perez-Zenteno*.  There, we held that the applicant's proposed particular social group, "Mexican citizens targeted by criminal groups because they have been in the United States and they have families in the United States," was not legally cognizable because the evidence provided by the applicant was insufficient to show the group was socially distinct, the group was not defined with particularity as it could include large swaths of the Mexican population, and the group was defined circularly by the risk of persecution. *Perez-Zenteno*, 913 F.3d at 1308–10.

_____

[3] In *Matter of A-B-*, the Attorney General overruled *Matter of A-R-C-G-*, 26 I. & N. Dec. 388 (BIA 2014), which held that the particular social group of "married women in Guatemala who are unable to leave their relationship" was legally cognizable.  The Attorney General decided that, instead, the particular social group of "El Salvadoran women who are unable to leave their domestic relationships where they have children in common" was legally incognizable. *Matter of A-B-*, 27 I. & N. at 319, 326, 346.  The Attorney General reasoned that the expansive category of particular social groups based on private violence was legally incognizable because it did not exist independently of the persecution members of the group experienced. *Id.* at 319, 334–36. The Attorney General also clarified that an applicant seeking asylum on the basis of membership in a particular social group must show: (1) membership in a particular group that is comprised of members with an immutable characteristic, is defined with particularity, and is socially distinct within the relevant society; (2) membership in the group is a central reason for her persecution; and (3) the harm is inflicted by the government or by persons that the government is unable or unwilling to control. *Id.* at 320.  The Attorney General added that asylum claims stemming from domestic violence perpetrated by nongovernmental actors generally will not qualify for asylum because it is unlikely that the alien can show that the violence is an issue that the government is unwilling or unable to address, even if it is true that the government has problems effectively policing certain crimes or certain groups are more likely to be victimized. *Id.*

After an applicant establishes that she is part of a protected group, she must demonstrate that she (1) was persecuted in the past on account of a protected ground or (2) has a well-founded fear that she will be persecuted in the future on account of a protected ground. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006) (per curiam). "To establish asylum based on past persecution, the applicant must prove (1) that she was persecuted, and (2) that the persecution was on account of a protected ground." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1351 (11th Cir. 2009) (alteration adopted). And to establish a well-founded fear of future persecution, the applicant must show a reasonable possibility that he will be singled out for persecution on account of a protected ground and that his fear is both "subjectively genuine and objectively reasonable." *Id.* at 1352.

A noncitizen must prove she suffered persecution *on account of* a protected ground. *Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1158 (11th Cir. 2019). This connection between the persecution and the statutorily protected ground is known as the "nexus" requirement. *Id.* To satisfy the nexus requirement, an asylum applicant must establish that the protected ground was "at least one central reason" for her persecution. *Id.* We have not specifically construed the term "central" in any published decision, but we have stated that one of the five statutory grounds need not be the only motivation for the persecution. *Sanchez Jimenez, v. U.S. Att'y Gen.*, 492 F.3d 1223, 1232 (11th Cir. 2007) ("Rather, it is by

8

now well-established in our case law that an applicant can establish eligibility for asylum as long as he can show that the persecution is, at least in part, motivated by a protected ground." (quotation marks and emphasis omitted)).

To qualify for withholding of removal under the INA, an applicant must show that, if returned to his country, her life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). If a petitioner is unable to meet the standard of proof for asylum, she cannot meet the more stringent standard for withholding of removal. *Id.*

### III.

The BIA did not err in finding that Dominguez-Salmerson's proposed particular social group was not legally cognizable as it was circularly defined by the harm suffered or feared, was not socially distinct, and was not defined with particularity. First, she uses her alleged past and future persecution, sexual harassment, and assault from Hernandez-Morales to define her proposed social group. This is not a valid basis for defining a particular social group. *Castillo-Arias*, 446 F.3d at 1198.

And second, even if Dominguez-Salmerson's proposed social group was not circularly defined, she did not provide enough evidence to demonstrate that it was distinct or defined with particularity. Even if the members of Dominguez-

Salmerson's proposed social group share an immutable characteristic—gender—she provided little to no evidence to demonstrate that the proposed group was perceived as distinct by society as a whole. *See Amezcua-Preciado*, 943 F.3d at 1344–45. And, similarly to *Perez-Zenteno*, Dominguez-Salmerson's proposed group lacks definable boundaries and potentially encompasses a very large percentage of the Honduran population. 913 F.3d at 1309 (finding that a proposed social group was not definable because it was amorphous, overbroad, and subjective).

Because we find that Dominguez-Salmerson did not propose a legally cognizable particular social group, we need not reach the second issue of whether substantial evidence supports the BIA's finding that Dominguez-Salmerson otherwise failed to meet her burden of showing she was eligible for asylum or withholding of removal.

**PETITION DENIED.**