[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12949
Non-Argument Calendar

_____

Agency No. A208-455-102

MARVIN FERNANDO ZACARIAS-LOPEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(June 4, 2021)

Before WILSON, JORDAN, and GRANT, Circuit Judges.

PER CURIAM:

Marvin Fernando Zacarias-Lopez petitions for review of the Board of Immigration Appeals final order affirming the immigration judge's denial of his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture.  We deny the petition.

I.

Zacarias-Lopez, a native and citizen of Guatemala, entered the United States illegally at or near Hidalgo, Texas in 2015.  The Department of Homeland Security initiated removal proceedings against him by filing of a notice to appear in immigration court, charging that he was removable under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien who was present in the United States without being admitted or paroled.  Zacarias-Lopez admitted the factual allegations in the notice to appear, conceded removability as charged, and filed an application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT).

In support of his application, Zacarias-Lopez stated that beginning in 2009 when he was 11 years old, members of the gang called the Zetas threatened and harassed him.  He was mistreated by the Zetas because he did not have enough money to pay them a monthly fee so that they would leave him alone.  They asked him for money and threatened him but did not physically harm him.  Zacarias-

2

Lopez reported the mistreatment to the police, but the police have an agreement with the Zetas to set them free after they are arrested. Under pressure from the Zetas—and from his father, who wanted Zacarias-Lopez to quit school and work with him—Zacarias-Lopez eventually dropped out and began working. His mother sent him to the United States to find freedom and security for his family.

Zacarias-Lopez testified that the Zetas were aggressive and violent—sometimes they hit people, or they pointed guns at people and threatened to kill them. The Zetas controlled the territory in Guatemala where Zacarias-Lopez and his family lived, and he did not believe that he could safely relocate within Guatemala today because the country was contaminated with corruption and the Zetas would find him wherever he went. He acknowledged that his family still lived in Guatemala and the Zetas had not been looking for him since he left, but he said that they still bothered people who lived in the same town.

Zacarias-Lopez also submitted the State Department's 2015 Human Rights Report for Guatemala and 2016 Crime and Safety Report for Guatemala. The 2015 Guatemala Human Rights Report stated that primary human rights abuses in Guatemala included widespread institutional corruption, particularly in the police and judicial sectors; police and military involvement in serious crimes, such as kidnapping, drug trafficking, trafficking in persons, and extortion; and societal violence.

The 2016 Crime and Safety Report for Guatemala reported that Guatemala's homicide rate was one of the highest in the Western Hemisphere, driven by four key factors: narco-trafficking activity, gang related violence, a heavily armed population, and a legal system that remains unable or unwilling to hold many criminals accountable. In spite of regional initiatives to combat drug trafficking and gangs, they continued to be a concern in Guatemala City and rural areas.

The immigration judge concluded that the evidence did not support a finding that Zacarias-Lopez had been persecuted in the past or that he had a well-founded fear of future persecution. It also found that Zacarias-Lopez failed to show a nexus between his mistreatment by the Zetas and any of the grounds for asylum or withholding of removal. Finally, it found no evidence that Zacarias-Lopez was tortured in his country or that it was more likely than not that he would be tortured if he returned to Guatemala. It denied his application for asylum, withholding of removal, and CAT relief, and ordered his removal.

Zacarias-Lopez appealed to the Board of Immigration Appeals. The Board found no error in the immigration judge's findings that Zacarias-Lopez was a victim of crime, not persecution, and that his fear of future criminal activity was not a basis for asylum. The Board concluded that Zacarias-Lopez had not established membership in a cognizable particular social group, and it agreed with the immigration judge that Zacarias-Lopez was ineligible for asylum and

4

withholding of removal because he had not established the requisite nexus between his alleged fear of persecution and his membership in the putative social group. Finally, regarding CAT relief, it agreed with the immigration judge that Zacarias-Lopez did not experience torture in Guatemala and found no clear error in the determination that Zacarias-Lopez did not establish that it was more likely than not that he would experience torture if he returned to Guatemala. The Board therefore dismissed Zacarias-Lopez's appeal, and this petition for review followed.

## II.

We review the decision of the Board as the agency's final decision, and we review the immigration judge's opinion to the extent that the Board expressly adopted or explicitly agreed with that opinion. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947–48 (11th Cir. 2010). We review the agency's conclusions of law, such as whether an asserted group qualifies as a "particular social group" under the Immigration and Nationality Act, de novo. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).

We review the agency's factual determinations under the substantial evidence test. *Id.* Under this highly deferential test, we must affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc) (citation omitted). We view the evidence in the light

5

most favorable to the agency's decision and draw all reasonable inferences in favor of that decision. *Id.* at 1027. Under the substantial evidence test, we can reverse the agency's decision only if we conclude that the evidence compels a contrary conclusion. *Id.* Only "in a rare case does the record compel the conclusion that an applicant for asylum suffered past persecution or has a well-founded fear of future persecution." *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1239 (11th Cir. 2006).

## III.

The Attorney General may grant asylum to an alien who meets the statutory definition of a "refugee." 8 U.S.C. § 1158(b)(1)(A). A refugee is defined as a person who is located outside the country of his nationality and who is unable or unwilling to return to and avail himself of the protection of that country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The applicant bears the burden of proving that he is a refugee. 8 U.S.C. § 1158(b)(1)(B)(i). To qualify for asylum based on past persecution, the applicant must prove both that he was persecuted and "that the persecution was on account of a protected ground." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1351 (11th Cir. 2009) (citation omitted). To establish a well-founded fear of future persecution, the applicant must show that (1) he is unable or unwilling to return to his country because he fears that he will be persecuted on

6

account of a protected ground; (2) his fear of persecution is both "subjectively genuine and objectively reasonable;" and (3) there is a "reasonable possibility" that he will be persecuted on account of a protected ground, or that "he is a member of, or is identified with, a group that is subjected to a 'pattern or practice' of persecution in his country of nationality." *Id.* at 1352 (citation omitted).

To qualify for withholding of removal under the INA, an alien must show that, if returned to his country, his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3). If a petitioner is unable to meet the standard of proof for asylum, he cannot meet the more stringent standard for withholding of removal. *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 819 (11th Cir. 2004).

Importantly, both asylum and withholding of removal require the applicant to show that his mistreatment was or would be because of a protected ground. 8 U.S.C. §§ 1101(a)(42)(A); 1231(b)(3). In other words, the applicant must show a nexus between the harm he suffered or fears and one of the statutory grounds for asylum or withholding of removal. *Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1158 (11th Cir. 2019).

Zacarias-Lopez's application for asylum and withholding of removal was based on his claim that he had been persecuted by the Zetas and had a well-founded fear of future persecution because of his membership in a particular social

7

group, which he defined as "Guatemalan youth that have resisted the Zetas cartel." We must deny Zacarias-Lopez's petition regarding his application for asylum and withholding of removal for at least three reasons. First, substantial evidence supports the immigration judge's finding that Zacarias-Lopez had not experienced past persecution and had no well-founded fear of future persecution. Zacarias-Lopez's written statement and testimony established that he had experienced acts of extortion and gang recruitment, but the Zetas had never physically harmed him. This mistreatment does not amount to persecution; "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (citation and quotation marks omitted). Evidence that is consistent with acts of private violence or that merely shows that a person has been the victim of criminal activity does not constitute evidence of persecution based on a statutorily protected ground. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006). The lack of any past persecution, combined with Zacarias-Lopez's testimony that his family had remained in Guatemala without incident and that the Zetas had not been looking for him since he left, supported the immigration judge's finding that Zacarias-Lopez had no well-founded fear of future persecution if he returned to Guatemala.

Second, the Board did not err in determining that Zacarias-Lopez had not shown that he was a member of a cognizable "particular social group" as that term is used in the Immigration and Nationality Act. To qualify as a "particular social group," (1) the group's members must have a common characteristic that must be immutable or fundamental to a member's individual conscience or identity; (2) the group must have sufficient social distinction so as to be perceived as a distinct group by society as a whole; and (3) the group must be defined with particularity, meaning that it must "be discrete and have definable boundaries," and not be "amorphous, overbroad, diffuse, or subjective." *Amezcua-Preciado v. U.S. Att'y Gen.*, 943 F.3d 1337, 1342–43 (11th Cir. 2019) (citation omitted).

Zacarias-Lopez's proposed particular social group of "Guatemalan youth who resisted the Zetas cartel" was too broad and amorphous to be cognizable, considering that the terms "youth" and "resist" were undefined. The group could potentially encompass a large portion of the Guatemalan population, given that (1) Zacarias-Lopez's own "resistance" appeared to be nothing more than an inability to pay the monthly fee that the Zetas demanded, and (2) based on the evidence of country conditions that Zacarias-Lopez provided and his testimony regarding the pervasive presence of the Zetas, a proposed social group potentially implicating all Guatemalan youths who experience extortion or intimidation by the Zetas would be vast. *See Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1311

9

(11th Cir. 2019) (rejecting proposed social group as "amorphous, insufficiently defined, and potentially" vast). Additionally, none of the evidence that Zacarias-Lopez provided demonstrated that Guatemalan youth who resisted the Zetas were viewed as socially distinct. *See id.* at 1309.

Third, and last, although Zacarias-Lopez mentions the Board's conclusion that he failed to show a nexus between the mistreatment he suffered and his membership in his proposed social group, he does not make any argument challenging that conclusion. He has therefore abandoned any argument on that issue, and the decision of the Board is due to be affirmed on that ground alone. *See See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014); *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009); *see Perez-Sanchez*, 935 F.3d at 1158.

## IV.

"To be eligible for relief pursuant to CAT, an applicant must meet a higher burden than for asylum eligibility, and show 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1293 (11th Cir. 2020) (quoting 8 C.F.R. § 1208.16(c)(2)). Torture "is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 1208.18(a)(2).

To constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering. *Id.* § 1208.18(a)(5).

The Board did not err in determining that Zacarias-Lopez does not qualify for withholding of removal pursuant to CAT. As we have already explained, substantial evidence supports the immigration judge's finding that Zacarias-Lopez had not been persecuted and did not have a well-founded fear that he would be persecuted if he returned to Guatemala. Again, the "burden of proof for an applicant seeking withholding of removal under the Convention, like that for an applicant seeking withholding of removal under the statute, is higher than the burden imposed on an asylum applicant." *Lingeswaran*, 969 F.3d 1293 (citation omitted). The same evidence that supports the finding that Zacarias-Lopez did not suffer past persecution and is not likely to suffer future persecution necessarily also supports the agency's finding that Zacarias-Lopez is not likely to be tortured if he returns to Guatemala.

V.

Zacarias-Lopez has not demonstrated legal error by the immigration judge or the Board of Immigration Appeals, and substantial evidence supports the agency's denial of his applications for asylum, withholding of removal, and CAT relief. Accordingly, we deny his petition for review.

**PETITION DENIED.**

11