[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14276

_____

Agency No. A209-870-735

LESLYN YADERY LAZARO-RUANO,
JOHELIZ SUJEY LAZARO-RUANO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 8, 2021)

Before ROSENBAUM, LUCK, and JULIE CARNES, Circuit Judges.

JULIE CARNES, Circuit Judge:

Petitioner Leslyn Yadery Lazaro-Ruano is a native and citizen of Guatemala who illegally entered the United States.  After being apprehended, and conceding that she was removable under applicable immigration law, Petitioner filed an application for asylum and withholding of removal.  To obtain asylum or withholding of removal, the Immigration and Nationality Act ("INA") requires, in pertinent part, that an applicant prove that she will be persecuted if returned to her own country and that this persecution will be based on her membership in a "particular social group."  Petitioner here averred that the particular social group to which she belonged was "young Guatemalan women forced into prostitution."  The persecution she allegedly feared if returned to Guatemala was being forced into prostitution.[1]

An immigration judge ("IJ") conducted a hearing and denied Petitioner's application on numerous grounds.  Petitioner appealed to the Board of Immigration Appeals ("BIA"), which affirmed the IJ's decision.  The BIA agreed with the IJ's legal conclusion that Petitioner had failed to identify a cognizable social group to which she belonged.  Specifically, the BIA concluded that Petitioner's proposed group was circularly defined because the group was defined by the very persecution that membership in the group would purportedly cause.  Petitioner

---

[1]  Co-Petitioner Joheliz Sujey Lazaro-Ruano, who is Petitioner's minor daughter, is a derivative beneficiary of Petitioner's application without any independent claim for relief.

2

argues that the BIA erred in reaching this determination. We find no error and therefore deny the petition.

## I.    BACKGROUND

After border patrol officers caught Petitioners jumping a fence near Tijuana in December 2016, Petitioners were each charged with being removable as an alien present in the United States without having been admitted or paroled and as an alien arriving in the United States at a time and place other than as designated by the Attorney General. Through counsel, Petitioners conceded removability.

Petitioner filed two applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), listing her daughter as a derivative beneficiary. In her original application, Petitioner claimed only (1) that the father of her child, William Barrientos, had fled gang persecution in Guatemala and (2) that she could not return to Guatemala because gang members had pursued and threatened her in an attempt to make William return. In an amended application, Petitioner offered a second ground for relief not mentioned in her first application. Specifically, Petitioner added a claim that an uncle had sexually abused her as a child and that police officers had sexually abused her at the age of 15 and forced her into prostitution when she turned 18.

Petitioner testified under oath at a merits hearing before an IJ. Although her story was at times confusing and incoherent, the relevant details were clear enough

3

for purposes of appeal. In short, Petitioner claimed that, when she was 15, police officers abducted her after school several days in a row and sexually abused her for hours. After filing a complaint at the police station, officers came to her house, beat up her family, and threatened worse consequences if they filed another complaint. This prompted her family to relocate to a city six hours away.

According to Petitioner, she was safe in her new home until she turned 18 and went to the local police station to get an identification card. After Petitioner returned home, "the exact same police officers" who had beaten up her family three years before in a city six hours away allegedly arrived at her new home and threatened to kill her if she did not get into their vehicle and work for them as a prostitute. The officers then allegedly took her to a house run by two people, "Mama Thelma" and "Rigoberto," who gave her outfits to wear and forced her to have sex with people.

Petitioner testified that she eventually escaped and went to live with William, a man she had met either shortly before or shortly after escaping. Months later, Petitioner realized that the same people who had mistreated her also wanted William to smuggle drugs through the port where he worked, prompting him to flee to the United States. After William departed, Petitioner learned that she was pregnant with his baby. According to Petitioner, unknown individuals later raped her on her way to a doctor's appointment and threatened to kill her while she was

4

in the hospital recovering from the birth of her daughter. After receiving additional written threats from unknown individuals, Petitioner and her daughter left Guatemala for the United States.

In an oral decision, the IJ denied Petitioner's application for asylum, withholding of removal, and CAT relief, identifying four alternative grounds for denying her claims. As to the veracity of Petitioner's factual allegations, the IJ found that Petitioner had not testified credibly. In support of this adverse-credibility determination, the IJ made extensive findings, noting, among other things, that rather than promptly answering questions, Petitioner stared at the floor in silence or glared at the IJ for long periods, sometimes exceeding 30 seconds. Further, Petitioner offered several stories about when and where she had met William and when and how she had escaped from the house of prostitution. In addition, Petitioner could not explain inconsistencies in her account. For example, her first asylum application failed to even mention the past abuse on which she ultimately based her claim of persecution—having been forced into prostitution. Instead, in her original asylum application, Petitioner stated that she feared returning to Guatemala because of gang violence. This explanation was consistent with what Petitioner had told border patrol was her reason for leaving Guatemala when she was apprehended at the border. In short, Petitioner never mentioned

5

being forced into prostitution while in Guatemala in either her contemporaneous explanation to border authorities or her first formal request for asylum.

As to its second ground for rejecting Petitioner's claim—the lack of evidence corroborating her account—the IJ faulted Petitioner for (1) failing to have William testify by video, given his central role in her account and the fact that he was currently detained in another immigration facility with video capabilities, and (2) failing to get written statements from her parents, given that she had many months to do so and they allegedly knew about her troubles in Guatemala.

The IJ's third ground for denying the application was the untimeliness of Petitioner's asylum application. The IJ's fourth ground was Petitioner's failure to identify a cognizable "particular social group" for purposes of asylum and withholding of removal. Specifically, the IJ found that Petitioner's proposed group of "relatives or significant others of individuals targeted by gangs" was non-cognizable because individuals targeted by gangs for recruitment or crime do not qualify as a "particular social group" under the INA. As for Petitioner's proposed group of "young Guatemalan women forced into prostitution," the IJ found that this group was circularly defined—and hence non-cognizable—because the group's definition depended on its members' risk of experiencing harm.

The BIA affirmed the IJ's denial of relief. First, the BIA found that Petitioner had waived her CAT claim by failing to challenge the IJ's denial of CAT

6

protection in her appellate brief. As to asylum and withholding of removal, the BIA agreed with the IJ that Petitioner was not entitled to relief because her proposed group of "young Guatemalan women forced into prostitution" was circularly defined and therefore not cognizable as a "particular social group" under the INA.[2] Having disposed of Petitioner's claims on this basis, the BIA expressly declined to address the IJ's alternative findings that Petitioner did not testify credibly, provide corroborative evidence, or file a timely asylum application. This petition followed.

## II.    DISCUSSION

### A.    Standard of Review

In immigration cases, our review is limited to "final orders of removal." *Gaksakuman v. U.S. Att'y Gen.*, 767 F.3d 1164, 1168 (11th Cir. 2014) (quotation marks omitted) (alteration accepted). "We review the BIA's decision as the final judgment, unless the BIA expressly adopted the IJ's opinion" or "agree[d] with the IJ's reasoning." *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019). "[W]e review all legal conclusions *de novo*, including whether a group proffered by an asylum applicant constitutes a particular social group under the INA." *Id.* (citations omitted).

---

[2] Although Petitioner had not raised the issue on appeal, the BIA also *sua sponte* held that the alternative group of "relatives or significant others of individuals targeted by gangs" was not cognizable as a "particular social group" because the group lacked particularity, social distinction, and a common immutable characteristic. That issue is not before us on appeal.

### B.     Asylum and Withholding of Removal

Agreeing with the IJ that Petitioner's proposed group of "young Guatemalan women forced into prostitution" was not cognizable as a "particular social group" under the INA, the BIA denied Petitioner's application for asylum and withholding of removal.  Specifically, the BIA and IJ concluded that the proposed group was impermissibly defined, in circular fashion, by its members' persecution or risk of persecution.  Petitioner challenges that determination on appeal.[3]  We conclude, however, that the agency's ruling was correct.

To obtain asylum or withholding of removal under the INA, an applicant must prove that, if returned to her home country, she will be persecuted on account of her "race, religion, nationality, membership in a particular social group, or political opinion."  INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A) (asylum);

---

[3]  We lack jurisdiction to consider any other issues.  We review our subject matter jurisdiction *de novo*.  *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015).  Here, the IJ's finding that Petitioner was not credible, his conclusion that Petitioner failed to provide reasonably available corroborative evidence, and his determination that Petitioner's asylum application was time-barred are matters beyond the scope of our review because the BIA expressly declined to address those issues.  *See Perez-Zenteno*, 913 F.3d at 1306 (noting that our review is limited to the BIA's decision except to the extent that the BIA adopted or agreed with the IJ's decision).  As to the agency's denial of CAT relief and its determination that Petitioner's proposed group of "relatives or significant others of individuals targeted by gangs" was not a cognizable "particular social group," those claims of error are unexhausted because Petitioner failed to challenge them on appeal to the BIA.  INA § 242(d)(1), 8 U.S.C. § 1252(d)(1) (requiring exhaustion of administrative remedies as a prerequisite for judicial review); *Indrawati*, 779 F.3d at 1297 ("A petitioner fails to exhaust her administrative remedies with respect to a particular claim when she does not raise that claim before the BIA."); *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1251 (11th Cir. 2006) (holding that we lack jurisdiction to review an unexhausted claim of error "even if the BIA addressed the underlying issue *sua sponte*").

8

INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A) (withholding of removal).

Petitioner does not claim that she will be persecuted because of her race, religion, nationality, or political opinion. That leaves membership in a particular social group as the sole route for Petitioner to claim persecution and thereby demonstrate eligibility for relief. Under the INA, a group is not cognizable as a "particular social group" unless it satisfies three requirements: immutability, social distinction, and particularity. *Amezcua-Preciado v. U.S. Att'y Gen.*, 943 F.3d 1337, 1342–43 (11th Cir. 2019). We need address only the first requirement here.

To satisfy the immutability requirement, "the group's members must have a common characteristic other than their risk of being persecuted" that is "immutable or fundamental to a member's individual conscience or identity." *Id.* at 1342 (quotation marks omitted). Requiring that the group's defining characteristic be something other than its members' shared history of persecution or risk of future persecution serves an important purpose because an asylum applicant must prove that she was or will be persecuted *because* she is a member of a particular social group. *See* INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i) ("[T]he applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant."). If shared persecution alone could create a "particular social group" under the INA, a claim of persecution on account of membership in a group

9

would become circular, as an applicant would merely have to identify a particular harm that the applicant has suffered, label as a social group the set of people who have suffered or might in the future suffer that harm, and then claim membership in this ad hoc group that is defined only by one's history or risk of such harm. *See Cece v. Holder*, 733 F.3d 662, 682 (7th Cir. 2013) (Easterbrook, C.J., dissenting).

Our Court, however, has made clear that the INA's "particular social group" category "should not be a catch-all for all persons alleging persecution who do not fit" within the other categories of persons protected under the statute. *Amezcua-Preciado*, 943 F.3d at 1342 (quoting *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1198 (11th Cir. 2006)). Indeed, we have repeatedly rejected proposed groups that are defined in circular fashion. *See Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1310 (11th Cir. 2013) (proposed group of "members of a family targeted by a drug-trafficking organization because a family member sought criminal justice against a member of the drug-trafficking organization" was not cognizable because the group's "defining attribute" was "its persecution by the drug-trafficking organization"); *Perez-Zenteno*, 913 F.3d at 1309–10 (proposed group of "Mexican citizens targeted by criminal groups because they have been in the United States and have families in the United States" was "impermissibly circular" because "its defining attribute is the risk of persecution stemming from being targeted by criminal groups" (emphasis omitted)); *Castillo-Arias*, 446 F.3d

10

at 1196, 1198 (proposed group of "noncriminal informants working against the Cali cartel" was not cognizable because "their defining attribute is their persecution by the cartel").

Accordingly, a proposed "particular social group" that is circularly defined "by reference to the alleged persecution" is not cognizable under the INA unless members share an immutable "narrowing characteristic" other than the alleged persecution. *Amezcua-Preciado*, 943 F.3d at 1343, 1345. Petitioner has failed to identify such a characteristic. And for that reason, we find no error by the agency in concluding that Petitioner's proposed particular social group—"young Guatemalan women forced into prostitution"—was circularly defined by its members' persecution or risk of persecution and therefore was non-cognizable.

As an initial matter, Petitioner readily admits on appeal that her proposed group links women together in part "by the persecution they suffer"—namely, being "forced into prostitution." But relying on the Seventh Circuit's decision in *Cece v. Holder*, 733 F.3d 662 (7th Cir. 2013) (en banc), Petitioner argues that her proposed group nevertheless satisfies the requirement that group members share an immutable narrowing characteristic other than persecution. *Cece* held that "young Orthodox women living alone in Albania" who are "perfect target[s] of forced prostitution" constituted a cognizable particular social group because, "although it is true that these women are linked by the persecution they suffer—being targeted

11

for prostitution—they are also united by the common and immutable characteristic of being (1) young, (2) Albanian, (3) women, (4) living alone." *Cece*, 733 F.3d at 670, 672 (quotation marks omitted). By analogy, Petitioner argues that "young Guatemalan women forced into prostitution" are not only united by persecution but "are also united by the common and immutable characteristic of being (1) young, (2) Guatemalan, and (3) women."

*Cece*'s reasoning, however, cannot be squared with our own precedent. As the Government correctly argues, this case is analogous to our decision in *Amezcua-Preciado*, where we held that the proposed group of "Mexican women who are unable to leave their domestic relationships because they fear physical or psychological abuse by their spouse or domestic partner" was circularly—and therefore impermissibly—"defined by the underlying harm asserted as persecution." *Amezcua-Preciado*, 943 F.3d at 1345. There, we noted that, although members of the group "arguably share the immutable characteristic of being women, that characteristic alone is insufficient to make them cognizable as a particular social group." *Id.* at 1344. Because "[t]he women share[d] no 'narrowing characteristic' other than their risk of being persecuted," we concluded that the proposed group was "the kind of circular definition of a social group, created by reference to the alleged persecution, that cannot create a cognizable particular social group." *Id.* at 1345.

"Youth" is the only relevant difference between *Cece*'s group (young Albanian women living alone who suffer harm) and *Amezcua-Preciado*'s group (Mexican women in domestic relationships who suffer harm). Yet, Petitioner does not even cite *Amezcua-Preciado* or explain why adding an age characteristic to a group otherwise defined by gender and nationality makes the group cognizable. Her only argument is that age, like gender and nationality, is not "alterable." This argument misses the mark. Even assuming "youth" is unalterable and therefore immutable, not all immutable characteristics are narrowing characteristics. *See, e.g.*, *id.* at 1344–45 (holding that the immutable characteristic of being a woman is not a narrowing characteristic).

The bottom line is that the defining attribute of Petitioner's proposed group is its members' shared persecution or risk of persecution. Members lack any other narrowing characteristic that would prevent the proposed group from becoming a "catch-all" for nearly all women who do not fit into the other categories of persons protected under the INA. *See id.* Indeed, under Petitioner's definition, any Guatemalan woman would be eligible for asylum as a member of a "particular social group" if she possessed the vague, relative quality of being "young." *See Rreshpja v. Gonzales*, 420 F.3d 551, 555–56 (6th Cir. 2005) (holding that being "young" and "attractive" did not sufficiently narrow the circularly defined group of Albanian women forced into prostitution because, "[i]f the group . . . [was] defined

13

noncircularly—i.e., simply as young, attractive Albanian women—then virtually any young Albanian woman who possesses the subjective criterion of being 'attractive' would be eligible for asylum in the United States"). Because Petitioner's proposed group of "young Guatemalan women forced into prostitution" is defined by members' alleged persecution and lacks any non-persecutorial narrowing characteristic that would prevent it from encompassing broad swaths of society, the agency correctly determined that the group was impermissibly circularly defined.

In short, the agency did not err in denying Petitioner's application for asylum and withholding of removal. Because Petitioner failed to identify a cognizable "particular social group," she did not qualify for asylum. *See* INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A) (providing that asylum requires a showing of persecution "on account of" a protected category such as "membership in a particular social group"). Further, because Petitioner did not qualify for asylum, she could not meet the "more stringent" standard for withholding of removal. *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 819 (11th Cir. 2004). The petition must therefore be denied.

## III.    CONCLUSION

For the reasons explained above, we deny Petitioner's petition.

**PETITION DENIED.**

14

ROSENBAUM, Circuit Judge, concurring:

I concur in the judgment only.