[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-13379
Non-Argument Calendar
_____

Agency No. A209-863-581

MARIA MATEO-JUAN,
JACINTO RAYMUNDO-MATEO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 17, 2021)

Before MARTIN, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Maria Mateo-Juan and her minor child, Jacinto Raymundo-Mateo, petition for review of the Board of Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") denial of their applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

First, Mateo-Juan argues that the BIA erred by denying her application for asylum and withholding of removal on the basis that her proposed social group, "Guatemalan women and mothers against gang violence and practices," was not a cognizable social group. Second, she argues that the BIA erred by finding her ineligible for CAT relief because the Guatemalan government had and would acquiesce to her torture by gangs in Guatemala.

After careful review, we deny the petition.

**I.**

Petitioners are citizens of Guatemala. Mateo-Juan married her husband, Tomas Raymundo Gallego, when she was around age 16. Their son Raymundo-Mateo was born in 2003. In 2009, Raymundo Gallego moved to the United States and began sending money back to Mateo-Juan in Guatemala. Since that time, Mateo-Juan said she has been terrorized by gangs. Beginning in 2014, thieves began to follow Mateo-Juan to the place she would pick up the money Raymundo Gallego sent, and steal it from her.

2

It got even worse in 2016, when gang members targeted both Petitioners. Gangs tried to take Raymundo-Mateo away from Mateo-Juan to force him to sell marijuana. Gang members first approached Raymundo-Mateo at school and threatened to kill him and his mother if he did not sell marijuana. When he refused, they cut his hand. Because Raymundo-Mateo refused to comply, Mateo-Juan said the gang members twice attempted to rape her and threatened to kill her. She said she and Raymundo-Mateo escaped by running away. Mateo-Juan believed the same people were involved in the thefts and the attempted rapes, but she could not identify them because they wore masks. Raymundo-Mateo elaborated and said different—but related—groups of people approached him to sell marijuana. Mateo-Juan reported the incidents to the local mayor, but the mayor declined to take any action because he also feared the assailants. Shortly after the second attempted rape, Petitioners left for the United States.

They entered the United States near Sunland Park, New Mexico, on December 10, 2016. The next day, the Department of Homeland Security ("DHS") issued Notices to Appear ("NTA") to both Petitioners, charging them as removable from the United Sates on the grounds that they were present in the United States without being admitted or paroled after inspection. Removal proceedings commenced on May 16, 2017, when DHS filed Petitioners' NTAs with the

3

immigration court.  At a hearing on July 14, 2017, the Petitioners conceded they were subject to removal.

Mateo-Juan timely filed a Form I-589 Application for Asylum under Section 208 of the Immigration and Nationality Act ("INA"), and timely filed her applications for withholding of removal and CAT protection.  Raymundo-Mateo was listed as a derivative beneficiary on Mateo-Juan's application, but later filed his own independent applications for relief.[1]  Petitioners filed several exhibits in support of their applications, including 2016 State Department Human Rights and Crime and Safety Reports, news articles, and letters from people in Guatemala, which detailed the crime and gang violence in their home country.

On July 27, 2018, the IJ issued a decision denying the Petitioners' applications for asylum, withholding of removal and relief under the CAT, and ordered them removed to Guatemala.

In explaining the decision, the IJ first found both Petitioners credible.  Next, the IJ found that Petitioners failed to meet their burden to establish that one of five protected grounds was the main reason for their persecution.  Both claimed a well-founded fear of persecution based on their membership in a particular social group.

---

[1] If the noncitizen applicant is granted asylum, their spouse or, in this case, child, may also be granted asylum if they are not otherwise eligible for asylum.  8 U.S.C. § 1158(b)(3)(A).  If the principal applicant is denied asylum, then any dependent of that applicant is also denied asylum if the dependent is included in the same application.  8 C.F.R. § 1208.14(f).

For Mateo-Juan, that group was "Guatemalan women and mothers who oppose gang violence and practices." For Raymundo-Mateo, that group was "young Guatemalan males of Mayan descent." The IJ said neither of these groups was cognizable, noting that Mateo-Juan failed to establish that her group had the requisite social distinction and that Raymundo-Mateo failed to establish that his group is sufficiently particular.

The IJ went on to find that even if the Petitioners' particular social groups were cognizable, they failed to establish a nexus between their membership in that group and the harm they suffered from the gang members. The IJ said "it is well-established that victims of criminal organizations do not constitute a particular social group" and found that recruitment into a criminal organization does not establish a nexus to a particular group.

Because the Petitioners did not meet their burden to establish a claim for asylum, the IJ found they failed to meet the higher standard required for withholding of removal. Neither had Petitioners established that it was more likely than not they would be tortured if removed to Guatemala. This was because they testified that the gangs indiscriminately target everyone in their community and that they could not meet their high evidentiary burden without evidence that they would be individually targeted.

The BIA adopted and affirmed the IJ's findings and decision.

5

**II.**

When, as here, the BIA expressly adopts the IJ's decision, we review both the decisions of the BIA and the IJ. Perez-Zenteno v. U.S. Att'y Gen., 913 F.3d 1301, 1306 (11th Cir. 2019). We review de novo the BIA's conclusions of law review its factual findings under the "substantial evidence test." Lopez v. U.S. Att'y Gen., 914 F.3d 1292, 1297 (11th Cir. 2019). Under this test, we must affirm the BIA's factual findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (quotations marks omitted).

**III.**

As a preliminary matter, the government argues that Raymundo-Mateo has abandoned his independent claims for relief in the form of asylum, withholding of removal, or relief under the CAT because the BIA's denial of those claims was not addressed in Petitioners' opening brief in this appeal. Because the Petitioners do not address Raymundo-Mateo's claim based on his particular proposed social group of "young Guatemalan male of Mayan descent," we are required to hold that his standalone claim has been abandoned. See Jeune v. U.S. Att'y Gen., 810 F.3d 792, 797 n.2 (11th Cir. 2016).

**IV.**

We thus turn to Petitioners' challenges to the denial of Mateo-Juan's applications for asylum and withholding of removal. We start with asylum. To

establish asylum eligibility, Mateo-Juan must establish (1) past persecution on account of a statutorily listed protected ground, or (2) a well-founded fear that the statutorily protected ground will cause future persecution.  Diallo v. U.S. Att'y Gen., 596 F.3d 1329, 1332 (11th Cir. 2010) (per curiam).  Here, the statutorily protected ground Petitioners rely on is "membership in a particular social group." 8 U.S.C. § 1101(a)(42)(A).

The BIA has interpreted "particular social group" to mean "a group of persons all of whom share a common, immutable characteristic."  Perez-Zenteno, 913 F.3d at 1308–09 (quotation marks omitted).  A particular social group must be, among other things, "socially distinct within the society in question," meaning people who share the characteristic are distinct from other people in society in some significant way.  Id. at 1309 (quotation marks omitted).  "The members of a particular social group will generally understand their own affiliation with the grouping, as will other people in the particular society."  Id. (quotation marks omitted).

Here, the BIA and IJ found that Mateo-Juan's proposed social group, "Guatemalan woman and mother who opposes gang violence and practices," does not have the requisite social distinction.  In reaching this conclusion, the agency found, based on a precedential BIA decision, that Petitioners' testimony and supporting documentation did not establish that the proposed group is perceived as

7

a group within Guatemalan society.  See Matter of M-E-V-G-, 26 I&N Dec. 227,

250–51 (BIA 2014) (holding that in cases involving persecution by gangs, the

petitioner must show more than general harm from residing in an area with gang

violence).

  We cannot say that the BIA's and the IJ's decisions fail the substantial

evidence test.  Petitioners submitted credible evidence that criminals and gangs

often recruited children for purposes of conducting illegal activities, but this falls

short of establishing the necessary social distinction.  Id. at 244 (recognizing that

country conditions reports and press accounts may be evidence, but that evidence

must establish "that a group exists and is perceived as 'distinct' or 'other' in a

particular society"); Perez-Zenteno, 913 F.3d at 1308–09 (holding that petitioner's

reliance on a State Department Human Rights Report did not show the social

group—"Mexican citizens targeted by criminal groups because they have been in

the United States and they have families in the United States"—"was socially

visible or distinct").  The fact that gang violence occurs is insufficient to determine

that Guatemalan society as a whole perceives women and mothers who oppose

gang violence and practices as a distinct group.  See Amezcua-Preciado v. U.S.

Att'y Gen., 943 F.3d 1337, 1344–45 (11th Cir. 2019) (per curiam) (acknowledging

that petitioner's proposed group was based on "the immutable characteristic of

being [a] wom[a]n," but holding that characteristic alone was insufficient because

8

petitioner did not show it was "socially distinct").  As a result, Mateo-Juan has not established persecution on account of her membership in a particular social group.

And, because we cannot say the BIA and IJ erred by finding Petitioners were not eligible for asylum, they necessarily have not met their burden to show they are eligible for withholding of removal.  See Amezcua-Preciado, 943 F.3d at 1345–46.

## V.

Next we turn to Mateo-Juan's eligibility for CAT relief.  To be eligible for CAT relief, an applicant "must meet a higher burden than for asylum eligibility, and show 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'"  Lingeswaran v. U.S. Att'y Gen., 969 F.3d 1278, 1294 (11th Cir. 2020) (quoting 8 C.F.R. § 208.16(c)(2)).  In relevant part, CAT protects against torture "inflicted . . . with the consent or acquiescence of a public official or other person acting in an official capacity."  8 C.F.R. § 208.18(a)(1).  Acquiescence of a public official requires that the public official was aware of the actions constituting torture "prior to" the actions and "thereafter breach[ed] his or her legal responsibility to intervene to prevent" such actions.  8 C.F.R. § 208.18(a)(7).

Petitioners argue they are eligible for CAT relief because they will likely be tortured if they are removed to Guatemala.[2]  Mateo-Juan says the attempted rapes she suffered constitute torture, and, based on the local mayor's failure to intervene after Mateo-Juan reported the gang violence, that torture was inflicted with the acquiescence of a public official.

Here, substantial evidence supports the IJ and BIA's finding that Mateo-Juan had failed to establish that she was more likely than not to be tortured upon returning to Guatemala.  Mateo-Juan testified that she had informed the mayor about at least one of the attacks that she experienced, but, as recognized by the IJ, there was no evidence to establish that the mayor was aware of the gang members' conduct beforehand and failed to do anything about it.  See 8 C.F.R. § 208.18(a)(7).  And, although Petitioners' country conditions evidence described Guatemala's problem with violence against women, this evidence also showed that Guatemala was working to combat the problem.  Guatemala passed laws to protect these women and also established a 24-hour court, a police unit for sex crimes, and a special prosecutor for femicide.  Even if the gang violence and violence against women persists, this is not a basis on which to find the Guatemalan government has acquiesced to the harm Mateo-Juan says will come to her if she is removed to

---

[2] There are no derivative benefits available for CAT relief, so this claim relates only to Mateo-Juan.  See Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007) (per curiam).

10

Guatemala.  See Lingeswaran, 969 F.3d at 1294 ("A government does not acquiesce to torture where it actively, albeit not entirely successfully, combats the alleged torture." (quotation marks omitted)).

Accordingly, we must deny Mateo-Juan's and Raymundo-Mateo's petition for review.

**PETITION DENIED.**