[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12585

Non-Argument Calendar

_____

SANTA JAKELIN RAMOS-RAMOS,
BRIANA ZARIET RAMOS-RAMOS,

Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A208-696-634

———————————

Before ROSENBAUM, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Santa Jakelin Ramos-Ramos ("Ramos"), on behalf of herself and her daughter Briana, petitions for review of the denial of her application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). After careful review, we deny the petition.

## I.

Ramos and her daughter are citizens of Honduras who entered the United States without inspection in November 2015. Soon after, they were charged by the Department of Homeland Security as inadmissible and removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as immigrants not in possession of valid entry documents.

Ramos conceded removability and filed an application for asylum, withholding of removal, and CAT protection, listing her daughter as a derivative beneficiary, based on her membership in a particular social group. She wrote in her application that she feared returning to Honduras because, as a single mother with children, she would be an easy target for rape and extortion. She claimed that Honduran society supported violence and discrimination against woman, that police were corrupt and believed abuse of women was not their concern, and that the government was ineffective.

Ramos's application also described her own experiences with such violence and discrimination.  In 1999, when she was 16, she was violently raped.  She reported the man to police, but he was jailed for only thirteen days.  She became pregnant from the rape and had a baby girl, because abortion is prohibited by law in Honduras.  She also reported facing job and wage discrimination as a woman in Honduras.  She stated that she feared she would be tortured and raped if she returned to Honduras, that her children would be tortured, kidnapped, held for ransom, or some combination of these things, and that members of her family could be killed like her father, who had been found dead sometime after his disappearance in 1992.  She reported that her mother and two sisters remained in Honduras.

Before the hearing on her application for relief, Ramos filed a statement identifying her particular social group as "women victims of rape who are prevented by the government from seeking help and relief, in the form of abortion, and are treated as criminals if they undergo an abortion."  Then, at the hearing, counsel for Ramos and the government stipulated, pursuant to *Matter of Fefe*, 20 I. & N. Dec. 116 (BIA 1989), that Ramos would not testify, and that the contents of her application would be submitted in lieu of her testimony.  In response to the IJ's brief questioning before the hearing concluded, Ramos stated that her two older daughters lived with her mother in Honduras.

In May 2019, the IJ issued a written decision denying Ramos's application for asylum, withholding of removal, and CAT

protection.  The IJ found that Ramos's testimony was credible but that she did not meet her burdens for relief.

The IJ first found that Ramos failed to establish that her claim was based on persecution of membership in a cognizable particular social group.  The IJ indicated that her proposed group lacked a nexus to persecution, stating that it was "the right of a country to make laws governing its citizens, including under what conditions a woman may obtain an abortion."  And the possibility of being prosecuted for those laws, the IJ stated, did not amount to persecution under BIA precedent.  The IJ further noted that Ramos's proposed group was not cognizable because it was overly large and circularly defined by the risk of being persecuted.

Addressing the circumstances of Ramos's rape in 1999, the IJ explained that persecution "must be inflicted either by the government or by persons or organizations the government is unable or unwilling to control."  And Ramos, in the IJ's view, failed to establish based on this incident "that the government of Honduras [was] unable or unwilling to protect their citizens."  The IJ noted that the record was "unclear" why the perpetrator was released, and that there were many reasons why a prosecution might not go forward.

Accordingly, the IJ concluded that Ramos had not established either past persecution, or a well-founded fear of future persecution, on account of a protected ground, and so was not eligible for asylum relief.  As a result, the IJ stated, Ramos could not meet the higher standard for withholding of removal.

As to CAT protection, the IJ found that there was no evidence to show that "it is more likely than not that she would be tortured if returned to Honduras or that the government of Honduras would acquiesce in her being tortured." The IJ stated that the only harm Ramos feared from the government of Honduras was prosecution for abortion, which did not amount to persecution or torture. The IJ also found no indication that the government of Honduras would acquiesce in her being harmed by gangs or other criminals, since the U.S. Department of State country report for Honduras indicated that the government was actively fighting against the gangs.

Ramos appealed to the BIA, which affirmed the IJ's decision and dismissed Ramos's appeal. The BIA agreed with the IJ that Ramos's proposed social group was impermissibly circular, in that it was defined by the harm suffered by its members, and that it was "not persecution for a country to prosecute its citizens for crimes."

The BIA also reasoned that her claim for asylum was not viable "regardless of whether . . . she has delineated a social group that qualifies as a particular social group." In the BIA's view, her evidence reflected that she was "a victim, and fears once again becoming a victim," due to the criminal activity of private actors, "which are not deemed to establish a nexus to a protected ground." "[A]lso," the BIA continued, her asylum claim was not viable "because she ha[d] not demonstrated that the government of Honduras is unable or unwilling to control her purported persecutors." The BIA noted that the reason for her perpetrator's release after

two weeks in detention remained unclear, and that his early release was insufficient to conclude that the government of Honduras was unable or unwilling to protect her.  Accordingly, the BIA concluded that she was not eligible for asylum or, by extension, withholding of removal.

Finally, the BIA found no clear error in the IJ's finding that it was not more likely than not that Ramos would suffer persecution or torture by or with the acquiescence of the Honduran government, which the BIA noted was "actively fighting against criminal elements in that country."  Ramos now petitions this Court for review.

## II.

Where the BIA issues its own opinion, we review the BIA's decision except to the extent that it "adopted or agreed with the [IJ's] decision," and then we review both.  *Jathursan v. U.S. Att'y Gen.*, 17 F.4th 1365, 1372 (11th Cir. 2021).  We review the agency's legal conclusions *de novo* and its factual findings under the deferential substantial evidence test.  *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019).

In reviewing for substantial evidence, we must view the record in the light most favorable to the agency's decision, and we must affirm the decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Id.* (quotation marks omitted).  We may reverse a finding under the substantial evidence test only if the record compels a contrary result.  *Id.*

### III.

A noncitizen is eligible for asylum if she establishes that she is unable or unwilling to return to her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To meet this burden, an applicant must provide credible evidence establishing past persecution, or a well-founded fear of future persecution, on account of a statutorily protected ground. *Li Shan Chen v. U.S. Att'y Gen.*, 672 F.3d 961, 964–65 (11th Cir. 2011). "The protected ground must have been, or will be, 'at least one central reason for persecuting the applicant.'" *Amezcua-Preciado v. U.S. Att'y Gen.*, 943 F.3d 1337, 1342 (11th Cir. 2019) (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). Similarly, under the withholding-of-removal statute, a noncitizen may not be removed if her "life or freedom would be threatened" because of a protected ground, such as membership in a particular social group. 8 U.S.C. § 1231(b)(3)(A).

We have explained that the phrase "particular social group" "implies a subset of the population bound together by some discrete and palpable characteristics" that "set[s] the group off in a definite way from the vast majority of society." *Perez-Zenteno*, 913 F.3d at 1310. It is not a "'catch all' for all persons alleging persecution who do not fit elsewhere." *Id.* (quotation marks omitted).

The statutes governing asylum and withholding of removal protect against persecution not only by government forces but also by private groups or actors that the government cannot control.

*Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006). When an asylum applicant "alleges persecution by a private actor," she "must prove that [her] home country is unable or unwilling to protect [her]." *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 950 (11th Cir. 2010); *see Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1345 ("Lopez must show not only past persecution or a well-founded fear of future persecution, but also that she is unable to avail herself of the protection of her home country.").

In challenging the denial of asylum and withholding, Ramos maintains that the IJ and BIA erred in finding that her proffered particular social group was not cognizable and that it lacked a nexus to actionable persecution. But she does not challenge the agency's adverse finding on another essential element of her claim—that is, that she failed to show that the Honduran government was unwilling or unable to protect her. *See id.* The BIA explained that her claim for asylum (and, by extension, her claim for withholding of removal) was not viable even if she had "delineated a social group that qualifies as a particular social group," because she "ha[d] not demonstrated that the government of Honduras is unable or unwilling to control her purported persecutors."

We agree with the government that Ramos has abandoned her challenge to this ground—independent of whether she established membership in a particular social group—for denying her application for asylum and withholding of removal. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is

23-12585                Opinion of the Court                9

abandoned."). And when a petitioner "fails to challenge properly on appeal one of the grounds" on which the judgment was based, she is "deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). We therefore deny Ramos's petition as to her claims for relief in the form of asylum or withholding of removal.[1]

## IV.

To be eligible for CAT protection, "an applicant must meet a higher burden than for asylum eligibility, and show 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1293 (11th Cir. 2020) (quoting 8 C.F.R. § 1208.16(c)(2)). Torture is defined as an act which inflicts "severe pain or suffering, whether physical or mental" and must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). Generally, a government does not acquiesce to torture by non-state actors so long as it combats the unlawful activity, even if it is unsuccessful. *See Sanchez-Castro v. U.S. Att'y Gen.*, 998 F.3d 1281, 1288 (11th Cir. 2021) ("[E]ven if Sanchez-Castro were right that the police are not effective at controlling [gang activity], it is dispositive

---

[1] In any case, any challenge to the agency's findings on this point would fail for essentially the same reasons as Ramos's nearly identical challenge to the agency's denial of CAT protection.

that they are trying to do so."); *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242–43 (11th Cir. 2004) (affirming the denial of CAT protection based on evidence that the "[g]overnment actively, albeit not entirely successfully, combat[ted] the" harms feared).

In evaluating entitlement to CAT protection, we consider all relevant evidence, including "(1) whether the applicant has experienced past torture; (2) whether she could avoid future torture by relocating within the country; and (3) evidence about wider country conditions, including whether there have been gross, flagrant or mass violations of human rights in the country." *K.Y. v. U.S. Att'y Gen.*, 43 F.4th 1175, 1181 (11th Cir. 2022).

Here, the record does not compel a finding of persecution or torture by or with the acquiescence of the Honduran government. First, substantial evidence supports the agency's finding that the Honduran government did not acquiesce in the harm inflicted on Ramos in 1999 by a private citizen. The record shows that Ramos's rapist was arrested and detained. Although he was then released less than two weeks later, the reasons for his release are unclear, and, as the IJ noted, there are many legitimate reasons why a prosecution might not go forward. Thus, the record supports the agency's determination that the government did not acquiesce in Ramos's past harm. *Cf. Reyes-Sanchez*, 369 F.3d at 1243 ("That the police did not catch the culprits does not mean that they acquiesced in the harm.").

Second, substantial evidence supports the agency's finding that the Honduran government would not acquiesce in any

persecution or torture upon Ramos's return to Honduras. The BIA relied on country-conditions evidence indicating that the Honduran government is actively fighting against criminal elements in that country. *See Reyes-Sanchez*, 369 F.3d at 1243 (stating that the agency is "entitled to rely heavily" on country reports prepared by the U.S. State Department).

Even if the Honduran government has been relatively unsuccessful at combatting gang-related or other sexual violence, this does not amount to acquiescence under our precedent. *See Sanchez-Castro*, 998 F.3d at 1288 ("[E]ven if Sanchez-Castro were right that the police are not effective at controlling [gang activity], it is dispositive that they are trying to do so."); *Reyes-Sanchez*, 369 F.3d at 1243.

While Ramos also cites the Honduran government's criminalization of abortion, she does not challenge the agency's finding that the government is entitled to make and enforce laws prohibiting abortion, even in cases of rape. So we cannot consider it. And her claim that she would suffer harm from the application of those laws relies on a chain of events that, in our view, the agency reasonably rejected as too attenuated to establish that any future persecution or torture was more likely than not to occur. *See Lingeswaran*, 969 F.3d at 1293.

For these reasons, we conclude that substantial evidence supports the agency's denial of CAT protection. We therefore deny the petition for review.

**PETITION DENIED.**